## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| LUCINDA COUNCIL, RAVYNNE GILMORE, VERNA MAITLAND, and HILARI NGUFOR, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  - against -<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED and BANK OF AMERICA CORPORATION,<br><br>     Defendants. | Case No. 3:24-cv-00534 |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..............................................2

I.      INTRODUCTION..................................................................................2

II.     BACKGROUND.....................................................................................3

        A.    Plaintiffs' Civil Rights Allegations ........................................3

        B.    Defendants' Position on Plaintiffs' Allegations......................5

        C.    Negotiations and Mediations Between the Parties ................5

        D.    The Class Litigation .................................................................7

III.    THE PROPOSED CLASS SETTLEMENT AGREEMENT .........................8

        A.    The Settlement Class ...............................................................8

        B.    Relief Terms of the Settlement Agreement ...........................9

        C.    Release of Claims ...................................................................10

        D.    Class Notice and Settlement Administration .......................11

        E.    Attorneys' Fees and Expenses...............................................11

        F.    Proposed Date of Final Approval Hearing ...........................11

        G.    Class Action Fairness Act Notice .........................................11

IV.     ARGUMENT .......................................................................................12

        A.    Certification of the Settlement Class is Appropriate............13

              1.    Numerosity ..................................................................14

              2.    Commonality ...............................................................14

              3.    Typicality .....................................................................15

              4.    Adequacy of Representation .......................................16

5. Plaintiffs Submit That Certification Under Rule 23(b)(3) is Appropriate .................................................................16

B. The Proposed Settlement Satisfies the Legal Standard for Preliminary Approval ......................................................18

1. Likelihood of Success and Litigation Complexity Favors Settlement .................................................................19

2. Range of Possible Recovery and the Point On or Below the Range of Recovery at Which a Settlement Is Fair ...................20

3. More than Three Years of Facilitated Negotiations and Informal Discovery Support Settlement ....................................21

4. The Court Can Gauge Any Opposition to the Settlement at the Fairness Hearing ...........................................................23

C. The Proposed Notice is the Best Practicable .......................................23

D. Plaintiffs' Counsel Should Be Appointed As Class Counsel................24

CONCLUSION .................................................................................25

<u>TABLE OF AUTHORITIES</u>

CASES                                                                                            PAGE(S)

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................... 13, 16

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,*
    211 F.R.D. 457 (S.D. Fla. 2002) ...................................................... 12

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) ...................................................... 20

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984) .................................................... 12, 19

*Council et al. v. Merrill Lynch, et al.,*
    No. 50-2022-CA-012658 (Fla. Cir. Ct.).................................................4

*In re Checking Acct. Overdraft Litig.,*
    275 F.R.D. 654 (S.D. Fla. 2011) ......................................... 15, 16, 17

*In re Checking Acct. Overdraft Litig.,*
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................... 22

*City of L.A. v. Bankrate, Inc.,*
    No. 14 Civ. 81323, 2016 U.S. Dist. LEXIS 115071 (S.D. Fla. Aug. 24, 2016) .. 18

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) .................................................... 12, 20

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ......................................................................... 23

*In re Equifax Customer Data Sec. Breach Litig.,*
    No. 17 Md 2800, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) ..... 21

*Estate of Dolby v. Butler & Hosch, P.A.,*
    No. 3 Civ. 2246, 2006 U.S. Dist. LEXIS 102738 (M.D. Fla. Aug. 4, 2006) ...... 22

*Ferron v. Kraft Heinz Foods Co.,*
    No. 20 Civ. 62136, 2021 U.S. Dist. LEXIS 81589 (S.D. Fla. Jan. 18, 2021) ...... 17

*Figueroa v. Sharper Image Corp.,*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ........................................... 12

*Fresco v. Auto Data Direct, Inc.,*
    No. 3 Civ. 61063, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 14, 2007) .. 13, 18

*Holman v. Student Loan Xpress, Inc.,*
    No. 8 Civ. 305, 2009 U.S. Dist. LEXIS 113491 (M.D. Fla. Nov. 19, 2009) ...... 12

*In re Initial Pub. Offering Sec. Litig.,*
    226 F.R.D 186 (S.D.N.Y. 2005) ...................................................... 18

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ........................................................ 16

*Klewinowski v. MFP, Inc.*,
   No. 13 Civ. 1204, 2013 U.S. Dist. LEXIS 130591 (M.D. Fla. Sept. 12, 2013) ... 14

*Lipuma v. Am. Express*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ....................................... 20, 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .................................................................... 23

*Rosario-Guerro v. Orange Blossom Harvesting, Inc.*,
   265 F.R.D. 619 (M.D. Fla. 2010) ................................................. 15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159, 1170 (11th Cir. 2010) ....................................... 17, 18

*Smith v. Wm. Wrigley Jr. Co*,
   No. 9 Civ. 60646, 2010 U.S. Dist. LEXIS 67832 (S.D. Fla. June 15, 2010) . 14, 15

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) ................................................. 15

*In re U.S. Oil and Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) .................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................... 14

*Waters v. Cook's Pest Control, Inc.*,
   No. 7 Civ. 394, 2012 U.S. Dist. LEXIS 99129 (N.D. Ala. July 17, 2012) .......... 14

*Woznicki v. Radon Corp.*,
   No. 18 Civ. 2090, 2021 U.S. Dist. LEXIS 161400 (M.D. Fla. Aug. 25, 2021) ... 22

## STATUTES

42 U.S.C. § 1981 ...................................................................... 2

42 U.S.C. §§ 2000e ................................................................. 2

## RULES

Fed. R. of Civ. P. 23 ...................................................... *passim*

Local Rule 3.01 ....................................................................... 25

## OTHER

4 Newberg on Class Actions §11.41 (4th ed. 2002) .................................. 12

Manual for Complex Litigation (Fourth) §§ 21.632-33 (2004) ............................... 12

Plaintiffs Lucinda Council, Ravynne Gilmore, Verna Maitland, and Hilari Ngufor, individually and on behalf of the proposed Settlement Class (collectively, "Plaintiffs"), respectfully move for an order: (1) preliminarily approving the Settlement Agreement, attached as Exhibit A to the Affirmation of Adam T. Klein ("Klein Aff.")[1] between Plaintiffs and Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. and Bank of America Corp. ("Defendants" or "Merrill") (together with Plaintiffs, "Parties"); (2) conditionally certifying the proposed settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23; (3) appointing Plaintiffs as Class Representatives and Shavitz Law Group, P.A. ("Shavitz") and Outten & Golden LLP ("O&G"), jointly as Class Counsel; (4) approving the proposed Notice of Class Action, Proposed Settlement Agreement, and Settlement Fairness Hearing ("Notice") attached as Exhibit B, and authorizing its distribution; (5) setting a date and time for the Final Fairness Hearing; and (6) entering the proposed Preliminary Approval Order ("Order"), attached hereto as Exhibit C, in substantially the same form as the contents of the Order.

This motion is made based on the accompanying Memorandum of Points and Authorities, the Settlement Agreement, Declaration of Adam T. Klein and the accompanying exhibits, and Declaration of Gregg I. Shavitz, and all other papers, pleadings, documents, arguments, materials, and any other evidence the Court may consider.

---

[1] Unless otherwise indicated, all exhibits are attached to the Affirmation of Adam T. Klein ("Klein Aff.") and all capitalized terms used herein have the same meaning as set forth in the Settlement Agreement.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiffs are former Merrill employees who brought suit on behalf of themselves and current and former African-American employees who worked for Merrill as Financial Advisors ("FAs"), Financial Advisor Development Program Trainees ("FADPs") (formerly known as Practice Management Development Trainees ("PMDs")), and/or Financial Solutions Advisors ("FSAs") (collectively, "Financial Advisors"). Plaintiffs have reached a settlement with Defendants to resolve claims of race and color discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981 as amended ("Section 1981").

Plaintiffs brought this case to challenge discriminatory compensation and promotion practices at Merrill based on race and/or color. The proposed settlement of this important civil rights issue remedies the policies and practices that Plaintiffs challenged, thereby increasing opportunities for African-American Financial Advisors who were previously disadvantaged because of their race and/or color. In addition to the significant programmatic changes, which benefit both Class Members and future Financial Advisors, the settlement requires Merrill to pay Nineteen Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00), which will cover individual settlement payments to eligible Class Members, the costs of settlement administration, and attorneys' fees and costs.

As set forth below, the Settlement Agreement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval.

## II.    BACKGROUND

### A.    <u>Plaintiffs' Civil Rights Allegations</u>

In their federal complaint, filed on May 24, 2024, in this Court, Plaintiffs allege that Merrill afforded African-American Financial Advisors fewer business opportunities than comparable White Financial Advisors, and as a result, they received less compensation and have been promoted less frequently than their White counterparts. Compl. at ¶ 2. Plaintiffs further allege that African-American Financial Advisors were terminated (or "washed out") from employment with Defendants at higher rates than their White counterparts and fail to advance to more senior roles. *Id*. ¶ 3. Plaintiffs allege that these violations of African-American Financial Advisors' rights are systemic and based on company-wide policies and practices. *Id*. ¶ 4.

Prior to filing the lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the class claims, the proper measure of damages, the legal issues involved in race and color discrimination issues in corporations, and the likelihood of class certification. Klein Aff. ¶ 13. Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs and other Merrill current and former employees to determine their compensation, their job responsibilities, their backgrounds and contributions, and other information relevant to their claims. *Id.* ¶ 14. Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs related to their work and promotion standards, and conducted in-depth background research on Merrill, including filings and other public

documents, to obtain information on its structure, locations, and promotion and pay policies. *Id.*

Upon conclusion of their initial investigation, on October 9, 2020, Named Plaintiff Ravynne Gilmore filed a Charge of Discrimination against Merrill with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination on behalf of herself and other similarly situated African-American Financial Advisors. Soon thereafter, on October 15, 2020, Named Plaintiff Hilari Ngufor filed a Charge of Discrimination against Merrill with the EEOC alleging race discrimination on behalf of himself and other similarly situated African-American Financial Advisors.[2]

Prior to filing the Complaint, Plaintiffs previously filed a putative class action in Florida state court, alleging race discrimination claims based on federal and state law. *See Council et al. v. Merrill Lynch, et al.*, Case No. 50-2022-CA-012658 (Fla. Cir. Ct.), (filed Dec. 23, 2022). During conferences with the Parties, the Honorable Jaimie Goodman questioned whether the court could exercise jurisdiction over the matter relating to non-Florida settlement class members and indicated that federal court would be a more appropriate forum given the resources available and claims at issue. Klein Aff. ¶ 25. Upon consent of all Parties, on May 6, 2024, the Parties stipulated to voluntarily dismiss the matter pursuant to Fla. R. Civ. P. 1.420(a)(1), for the express purpose of filing the instant matter. *Id.*

---

[2]    On July 2, 2021, Plaintiffs Gilmore and Council filed a class action complaint of discrimination in the Eastern District of Michigan, styled *Gilmore et al. v. Merrill Lynch, Pierce, Fenner & Smith Inc. & Co. et al*, No. 21 Civ. 11553, and voluntarily dismissed the action without prejudice on November 22, 2022 to allow the parties to conclude their settlement negotiations.

### B.    Defendants' Position on Plaintiffs' Allegations

While the Parties concluded that it is in their best interest to resolve the Action, Defendants continue to deny the claims and allegations, including that they have discriminated or retaliated against African-American Financial Advisors in any way. Defendants believe that they treat all employees fairly and equally regardless of race or color and are committed to ensuring equal employment opportunity. To that end, Defendants believe that all Financial Advisors have the same opportunities to earn compensation regardless of race or color and are paid based on their success in advising clients. It is also Defendants' position that they have taken a number of actions over the last decade to help improve opportunities available to African-American employees, including but not limited to conducting an annual African-American Leadership Symposium, maintaining dedicated resources to provide coaching and support for African-American Financial Advisors, and implementing workshops for African-American Financial Advisors focused on best practices and strategies. Defendants remain committed to improving the opportunities available to African-American Financial Advisors, including through the programmatic relief set forth in the Settlement Agreement.

### C.    Negotiations and Mediations Between the Parties

The Parties agreed to this Settlement after more than three years of ongoing, arms-length negotiations. On September 22, 2020, Class Counsel sent Defendants a letter informing them of the Named Plaintiffs' claims and invited pre-litigation discussions to explore the possibility of an early resolution. Klein Aff. ¶ 15. After a

series of exchanges, the Parties entered into a Tolling Agreement in November 2020, and agreed to exchange preliminary information to assist them in analyzing the claims, defenses, and scope of exposure and damages. *Id.*

Defendants produced Human Resources and compensation data, as well as teaming and compensation policies to allow the Parties to engage in informed and good faith settlement discussions. *Id.* ¶ 15. Plaintiffs' Counsel analyzed the compensation data provided by Merrill to determine to what degree African-American Financial Advisors were paid less than their White counterparts, after controlling for standard variables, and calculated back pay damages. *Id.* Plaintiffs' Counsel also examined Defendants' job titles and compensation and teaming guidelines to identify any variability in the criteria used for compensation, teaming, and promotion decisions, the discretion given to individual decision-makers, and the fit between job responsibilities, job description, and job title. *Id.* ¶ 16. Plaintiffs' Counsel extensively researched legal scholarship and sociolegal literature to identify ways that Merrill can become a more inclusive and successful work environment for African-American Financial Advisors, in order to effectively negotiate for Merrill to reexamine and realign their hiring, compensation, and retention practices and policies and make impactful and long-term change. *Id.*

Based upon their investigation, Plaintiffs' Counsel assessed the merits, risks, and potential damages associated with the class claims of racial discrimination in pay and promotions, and the Parties then began to mediate the class dispute. *Id.* ¶ 17. The Parties retained an experienced third-party neutral, Mediator David Rotman, with

substantial experience in employment class actions, to assist them in settlement discussions. *Id.* On May 25, 2021, July 27, 2021, and September 28, 2021, the Parties attended good faith, arms-length mediations facilitated by Mediator David Rotman. *Id.* At the September 28, 2021 mediation, the Parties agreed to the general terms of a class settlement, which were memorialized in a settlement term sheet agreement. *Id.* Other terms of the settlement were negotiated over the ensuing months and the Parties finalized the Settlement Agreement on December 28, 2022, which was further modified on May 24, 2024. At all times during the settlement negotiation process, negotiations on the class claims were conducted at an arm's-length basis. *Id.* ¶ 18; *see* Ex. A (Settlement Agreement) § 1. The Named Plaintiffs have agreed to resolve their individual, non-class claims for separate consideration, and have agreed to provide a broader general release of claims for matters that are outside the scope of this Settlement. The separate consideration was negotiated separately and agreed to by the Parties after they reached agreement on the class claims and will not be taken from the Gross Fund.[3]

### D.    The Class Litigation

As contemplated in the Settlement Agreement, on May 24, 2024, Plaintiffs filed a Class Action Complaint against Defendants in this Court on behalf of themselves and others similarly situated, alleging on behalf of themselves and the Settlement Class Members (defined below) that African-Americans who are, or were, employed as FAs,

---

[3]    If requested by this Court, the Parties will provide a separate submission under seal describing the terms of the resolution of Named Plaintiffs' individual, non-class claims.  Klein Aff. ¶ 26.

FADPs/PMDs, and FSAs with the Company have been, and are, afforded fewer business opportunities than comparable White FAs, FADPs/PMDs, and FSAs.  The Named Plaintiffs collectively allege on behalf of themselves and Settlement Class Members that they have experienced, and do experience, race and/or color discrimination in aspects of their employment, including, but not limited to, in compensation, teaming or pooling opportunities, distribution of accounts, career advancement, work assignments, termination, and/or other terms and conditions of employment. Plaintiffs' Complaint seeks recovery of backpay wages, plus interest, and attorneys' fees and costs.  Compl. at ¶¶ 2-6; 21; 48.

## III.    THE PROPOSED CLASS SETTLEMENT AGREEMENT

### A.    <u>The Settlement Class</u>

"Settlement Class Members" means the class that the Parties jointly seek to have certified, solely for the purposes of the Settlement Agreement, which is defined as:

> [A]ll African-American employees and former employees who held the position(s) at the Company of Financial Advisor ("FA"), Financial Advisor Development Program Trainee ("FADP") (formerly known as Practice Management Development Trainee ("PMD")), and Financial Solutions Advisor ("FSA") at any time during the Class Period. "Settlement Class Members" do not include any FAs, FADPs, PMDs, or FSAs who (i) did not pass the licensing exams required for the respective position; (ii) have executed a release of claims on or before the deadline for the Settlement Administrator to mail Notice to the Settlement Class releasing any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims; or (iii) have obtained a final judgment or determination concerning any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims.

Ex. A (Settlement Agreement), §§ 2.31, 4.2.

**B.**    <u>Relief Terms of the Settlement Agreement</u>

The Settlement requires Merrill to pay a Gross Settlement Amount of Nineteen Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00). Ex. A (Settlement Agreement) § 4.1. The Gross Settlement Fund will cover: (1) Settlement Class Member payments; (2) settlement administration costs; (3) Court-approved attorneys' fees and expenses; and (4) applicable tax withholdings. *Id.* The plan of allocation fairly and adequately compensates every eligible Settlement Class Member. *Id.* § 4.3; Klein Aff. ¶ 22. The Parties have agreed that the payment amount will be calculated based on an assignment of points for each workweek worked during the Class Period in a relevant job title. Ex. A (Settlement Agreement) § 4.3.

In addition to monetary relief, Merrill agrees to significant programmatic relief measures, which are in place for a period of five years (60 months) from the date of the Final Approval Order. *Id.* § 4.5. These future-looking commitments are meant to reinforce Merrill's commitment to equal employment opportunity for all employees, irrespective of race and color. The programmatic relief measures that Merrill agreed to in the proposed Settlement include: (1) revised diversity and inclusion training for Merrill employees (including important topics such as preventing employment discrimination and harassment; how to recognize implicit or unconscious bias; and how to create an inclusive work environment that will evaluate employees and candidates fairly); (2) analyses of diversity metrics for African-American Financial Advisors on at least an annual basis (including examining rates of African Americans entering and exiting any Financial Advisor training program that prepares individuals to be fully-

licensed financial advisors; the rates of African-American Financial Advisor hiring and retention; and the ability of African-American Financial Advisors to grow their business, including growth in production credits, households, and revenue); (3) review and renewal of teaming approval policies that allow Financial Advisors to consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct that decisions to team or not to team may not be made on the basis of a legally protected characteristic; (4) developing additional workplace initiatives designed to attract diverse Financial Advisors and to retain them, and enhance their success, including targeted mentoring and training and a review of current and past diversity programs and initiatives; and (5) appointing an expert, outside labor economist to perform pay equity analyses during the programmatic relief period. *Id.*

### C.    Release of Claims

In exchange for this relief, the Settlement Class will release Defendants from the following claims ("Released Claims"):

> any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences, or nucleus of operative facts that form the basis of the class claims asserted in Complaint, including, but not limited to, claims for race and/or color discrimination under Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, local, or common law statute, regulation, or principle of common law or equity that may apply to such discrimination in employment or employee benefit claims.

*Id.* § 6.1(A).

10

### D.    Class Notice and Settlement Administration

As discussed more fully below, the Settlement provides for a detailed notice program, including retaining a settlement administrator to oversee the process, ensuring that Settlement Class Members will be sent the Settlement Notice via first-class U.S. Mail, and establishing a website and email account to answer Settlement Class Member questions, collecting and verifying responses, and distributing settlement payments. *Id.* §§ 3.3, 5.1(B).

### E.    Attorneys' Fees and Expenses

Plaintiffs' counsel did not begin to negotiate attorneys' fees and expenses until after agreeing to the principal terms set forth in the Settlement Agreement. Klein Aff. ¶ 19. Plaintiffs' Counsel will file their motion for attorneys' fees and expenses with the Court fourteen (14) days after filing the instant Motion. *Id.* ¶ 20. As explained in the Settlement Notice, Class Counsel will seek one-third of the Gross Settlement Amount ($6,583,500.00) in Attorneys' Fees. Ex. A (Settlement Agreement) § 4.4. Class Counsel will also seek recovery of Costs and Administrative Expenses. *Id.*

### F.    Proposed Date of Final Approval Hearing

Plaintiffs request that the Court schedule a Final Approval Hearing at least 45 days from the close of the Opt-Out Period to allow sufficient notice of the Settlement to the Settlement Class.

### G.    Class Action Fairness Act Notice

Defendants will submit the notices required by the Class Action Fairness Act of 2005 ("CAFA") to the appropriate Federal and State officials.

## IV.   ARGUMENT

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

Courts in this circuit recognize that the law favors compromise and settlement of class action suits.  *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007).  The court's review is a two-step process: preliminary approval and then, after notice is sent to the putative class, a subsequent fairness hearing to determine if final approval is warranted.  *Holman v. Student Loan Xpress, Inc.*, No. 8:08 Civ. 305, 2009 U.S. Dist. LEXIS 113491, at *14-15 (M.D. Fla. Nov. 19, 2009); *see also Manual*

12

*for Complex Litigation* (Fourth) §§ 21.632-33 (2004).  Preliminary approval requires two elements: <u>first</u>, the court must determine whether the requirements for class certification are met; and <u>second</u>, the court must determine if the proposed settlement is fair, reasonable, and adequate.  *See, e.g.*, *Fresco v. Auto Data Direct, Inc.*, No. 03 Civ. 61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (S.D. Fla. May 14, 2007).  Plaintiffs submit that each of these requirements is satisfied here.

## A.    <u>Certification of the Settlement Class is Appropriate.</u>

As set forth below, the Settlement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval under federal law.  For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a).  Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate when common question of law or fact predominate over any individual issues and a showing that the class action mechanism is the superior method efficiently handling the case.  Fed. R. Civ. P. 23(b)(3).[4]  As discussed below, Plaintiffs contend that these requirements are met here for settlement purposes.

---

[4]    The Rule 23(b)(3) analysis in the settlement context does not address all factors that courts consider when deciding whether to certify classes in litigation. The Supreme Court has held, "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1.   <u>Numerosity.</u>

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is met where the class is so numerous that "joinder of proposed class members is impracticable." *Smith v. Wm. Wrigley Jr. Co*, No. 9 Civ. 60646, 2010 U.S. Dist. LEXIS 67832, at *10 (S.D. Fla. June 15, 2010) (citation omitted). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Id.* (quoting *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000)). Plaintiffs estimate there are approximately 1,375 eligible Settlement Class Members based on the information provided by Defendants. Klein Aff. ¶ 21.

### 2.   <u>Commonality.</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike." *Klewinowski v. MFP, Inc.*, No. 13 Civ. 1204, 2013 U.S. Dist. LEXIS 130591, at *4 (M.D. Fla. Sept. 12, 2013); *see also Waters v. Cook's Pest Control, Inc.*, No. 7 Civ. 394, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (citing *Williams v. Mohawk Indus.*, 568 F.3d 1350,1355 (11th Cir. 2009)). "The threshold for

14

commonality under Rule 23(a)(2) is not high." *Tornes v. Bank of Am., NA  (In re Checking Account Overdraft Litig.)*, 275 F.R.D. 654, 659 (S.D. Fla. 2011).  Where, as here, the named plaintiff argues liability based on "a standardized course of conduct that affects all class members," courts routinely find commonality is satisfied.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).  Here, Plaintiffs believe that the putative Class is unified by common factual allegations and legal theories: class members were afforded fewer business opportunities, received less compensation, were promoted less frequently, were terminated at higher rates, and failed to advance to more senior roles because of their race, in violation of Title VII and Section 1981.  Plaintiffs submit that these claims and legal challenges experienced by all members of the Settlement Class unify the class for commonality purposes.

### 3.    <u>Typicality.</u>

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro v. Orange Blossom Harvesting, Inc.,* 265 F.R.D. 619, 627 (M.D. Fla. 2010) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004)).  "Typicality is satisfied where the named plaintiff's claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class."  *Smith*, 2010 U.S. Dist. LEXIS 67832, at *12 (quoting *Kornberg v. Carnival Cruise Lines Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  Plaintiffs, like the putative class, allege that: they were subjected to the same discriminatory job assignment, pay, and promotion policies, they suffered the same violations of Title VII and Section 1981, and they seek the same remedy through

declaratory and injunctive relief and an award of damages. Accordingly, Plaintiffs submit that typicality is met here.

### 4.    Adequacy of Representation.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This element of adequacy of representation is satisfied if (1) "plaintiffs' counsel [is] qualified, experienced, and generally able to conduct the proposed litigation" and (2) named plaintiffs lack "interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985)); *see also In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 659-60. Here, Plaintiffs and Settlement Class Members are in the same job title and position (Financial Advisors), and Plaintiffs contend that there is no evidence that Plaintiffs have interests that are at odds with those of Settlement Class Members. Additionally, Plaintiffs are represented by counsel who are experienced in litigating claims on behalf of classes of employees who allege employment law violations. *See* Klein Aff. ¶¶ 2-12; Shavitz Aff. ¶¶ 6-10.

### 5.    Plaintiffs Submit That Certification Under Rule 23(b)(3) is Appropriate.

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). Here, Plaintiffs seek certification for the purposes of the Settlement under Rule 23(b)(3), which allows class certification where: (1)

questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). However, unlike in the usual Rule 23(b)(3) analysis, because Plaintiffs seek "settlement-only class certification," the Court "need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D)." *Id.* at 620.

First, predominance requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 660 (quoting *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010)). Where plaintiffs are unified by a common legal theory and by common facts, predominance is satisfied. *See Ferron v. Kraft Heinz Foods Co.*, No. 20 Civ. 62136, 2021 U.S. Dist. LEXIS 81589, at *8 (S.D. Fla. Jan. 18, 2021). Here, Plaintiffs believe that their common contention – that Merrill's job assignment, pay, and promotion policies discriminated against African-American Financial Advisors based on their race and/or color – predominates over any issues affecting only individual class members.

Second, a superiority analysis probes whether resolution of hundreds of claims in one action is superior to individual lawsuits by promoting consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). This requires an examination of "the

relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys.*, 601 F.3d at 1183-84 (internal quotation omitted).  Here, Plaintiffs believe that certifying a class for settlement purposes will achieve economies of scale for Plaintiffs and the putative class, conserve judicial resources, and preserve public confidence in the judicial system by avoiding repetitive proceedings and preventing inconsistent adjudications.

For these reasons, Plaintiffs submit the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

**B.**    **The Proposed Settlement Satisfies the Legal Standard for Preliminary Approval.**

After determining that class certification is proper, courts engage in a preliminary fairness evaluation of the settlement.  "A proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco*, 2007 U.S. Dist. LEXIS 37863, at *11-12.  Preliminary approval is usually appropriate "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D 186, 191 (S.D.N.Y. 2005) (citation omitted); *see also City of L.A. v. Bankrate, Inc.*, No. 14 Civ. 81323, 2016 U.S. Dist. LEXIS 115071, at *14-15 (S.D. Fla. Aug. 24, 2016) (granting preliminary settlement approval where "the proposed settlement was made after mediation was

conducted," "[t]he negotiations appear to have been made in good faith and there do not appear to be any obvious deficiencies," and the settlement amount "appears to be within the range of reasonableness").

In evaluating the fairness of a class action settlement, courts in this circuit frequently analyze the six factors set forth in *Bennett v. Behring Corporation*, 737 F.2d 982 (11th Cir. 1984). These are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.* at 986.

As will be set forth in greater detail in the Motion for Final Approval – and as demonstrated by the attached Agreement – all six factors are readily met here.

## 1. Likelihood of Success and Litigation Complexity Favors Settlement.

As to factors (1), (2), and (4), if the case were to be litigated, the litigation would likely be complex and expensive. While Plaintiffs and Plaintiffs' Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Merrill, as well as the risks inherent to litigation. Klein Aff. ¶ 22. While Plaintiffs strongly believe that their claims have merit, and are suitable for class treatment, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims. *Id.* Plaintiffs further recognize the possibility that the lawsuit, if not settled now, might not result in any

recovery or might result in a less favorable recovery to the putative class. *Id.* ¶ 23.

Even if Plaintiffs were successful, Merrill would inevitably seek interlocutory review of class certification rulings via Rule 23(f) in the Court of Appeals, delaying the progress towards trial. *Id.* The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial. *Id.* Protracted litigation carries inherent risks that would necessarily have delayed and endangered the class members' monetary recovery. Even if Plaintiffs prevailed at trial against Merrill, any recovery could be delayed for years by an appeal. *See Lipuma v. Am. Express*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (holding likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

### 2. Range of Possible Recovery and the Point On or Below the Range of Recovery at Which a Settlement Is Fair.

As to factor (3), when evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Moreover, courts have determined that settlements may be reasonable even where class plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims

presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Here, notwithstanding the obstacles outlined above, the overall settlement commits Merrill to pay a gross amount of $19,950,000.00 to compensate the class and to undertake significant programmatic changes with a commitment period of programmatic relief of five years – a substantial result that will provide meaningful benefit to the putative class as well as current and future Merrill employees. The benefits are all the more significant given the strengths and weaknesses of the case, where failure at trial was certainly possible. Moreover, there was no fraud or collusion in the settlement. To the contrary, the Parties reached a settlement after more than three years of extensive, arm's-length negotiations between Counsel with many decades of employment discrimination class experience, and with the assistance of an experienced and well-respected mediator. *Id.* ¶ 15.

### 3.    Most than Three Years of Facilitated Negotiations and Informal Discovery Support Settlement.

As to factor (6), courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. The policy is to ensure that "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *In re Equifax Customer Data Sec. Breach Litig.*, No. 17 Md 2800, 2020 U.S. Dist.

LEXIS 118209, at *176-77 (N.D. Ga. Mar. 17, 2020); *see also Tornes v. Bank of Am., NA (In re Checking Acct. Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (approving class settlement where class counsel "developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation") (internal quotation and citation omitted).

Where the parties are "well informed of the merits of the case through discovery, the exchange of mediation statements and hours of intensive negotiations conducted through the mediator," "the Agreement is fair, reasonable, and adequate." *Woznicki v. Radon Corp.*, No. 18 Civ. 2090, 2021 U.S. Dist. LEXIS 161400, at *19 (M.D. Fla. Aug. 25, 2021) (finding sixth *Bennett* factor satisfied); *see also Estate of Dolby v. Butler & Hosch, P.A.*, No. 3 Civ. 2246, 2006 U.S. Dist. LEXIS 102738, at *16 (M.D. Fla. Aug. 4, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.").

Here, as outlined above, the Parties engaged in significant informal discovery relating to liability and class-wide damages, which allowed Plaintiffs and their counsel to fully assess the strengths and weaknesses of the claims. Klein Aff. ¶¶ 13-15. Plaintiffs' Counsel believe that this settlement achieves the objectives of any potential litigation: monetary payments to current and former African-American Financial Advisors and

meaningful programmatic relief over a five-year period that addresses the heart of Plaintiffs' claims. *Id.*

### 4. The Court Can Gauge Any Opposition to the Settlement at the Fairness Hearing.

Lastly, as to factor (5), the Court will be able to fully analyze any opposition to the settlement after Notice is issued and Settlement Class Members have an opportunity to be heard. Nevertheless, the fact that Named Plaintiffs have expressed their support for the Agreement weighs in favor of preliminary approval at this early stage. The monetary and programmatic relief is comprehensive, and Plaintiffs' Counsel are confident that Settlement Class Members will respond favorably. *Id.* ¶ 24.

In sum, a preliminary review of the *Bennett* factors supports a finding that the proposed Settlement falls within the "range of reason," such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

### C. The Proposed Notice is the Best Practicable.

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). The best practicable notice is that which is "reasonably calculated, under all of the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950).

The proposed Notice comports with the requirements of Rule 23(e).  The Notice clearly describes the terms of the Settlement, including identifying who is considered an eligible Settlement Class Member, the relief available to Settlement Class Members, and the procedures for opting out of or objecting to the settlement.  *See generally* Ex. B (Notice).  The Notice describes the fees and costs that Plaintiffs' Counsel will seek.  *Id.* at 12.  The Notice also provides contact information for Plaintiffs' Counsel and discloses the date, time, and place of the Final Approval Hearing.  *Id.* at 12, 13.  The Settlement Agreement further provides that the Settlement Administrator will mail the Notice to all eligible Settlement Class Members by first class United States mail, with a reminder postcard.  Ex. A (Settlement Agreement) § 5.1.

### D.    Plaintiffs' Counsel Should Be Appointed As Class Counsel.

O&G and Shavitz should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the

interests of the class[.]"  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendments.

Plaintiffs' Counsel satisfy these criteria.  Plaintiffs' Counsel should be appointed as Class Counsel because they have already done substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling employment discrimination class actions; are well-versed in employment and class action law; and are well-qualified to represent the interests of the Class.  *See* Klein Aff. ¶¶ 2-14; 13-15; Shavitz Aff. ¶¶ 6-10.  Moreover, many courts have found Plaintiffs' Counsel to be adequate class counsel in class actions in federal and state courts.  Klein Aff. ¶¶ 4-6; Shavitz Aff. ¶ 10.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) certify the proposed settlement class for settlement purposes only; (3) appoint Plaintiffs as Settlement Class Representatives and Plaintiffs' Counsel as Class Counsel; (4) approve the proposed Notice and authorize its distribution; (5) set a date and time for the final fairness hearing; and (6) enter the proposed Order.

## CERTIFICATE OF GOOD FAITH

Plaintiffs' Counsel certifies that, in conformance with Local Rule 3.01(g), Plaintiffs conferred with Defendants' counsel about the issues raised in this Motion. Defendants do <u>not</u> oppose the relief requested herein.

Dated:      May 24, 2024
              Boca Raton, FL         Respectfully submitted,

SHAVITZ LAW GROUP, P.A.
Gregg I. Shavitz (Bar No. 11398)
Paolo Meireles (Bar No. 91551)
951 Yamato Rd. Suite 285
Boca Raton, Florida 33431
Telephone: (561) 447-8888

Adam T. Klein*
Chauniqua D. Young*
OUTTEN & GOLDEN LLP
685 Third Avenue, Floor 25
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Courtney J. Hinkle*
OUTTEN & GOLDEN LLP
1225 New York Ave., Suite 1200B
Washington, D.C. 20005
Telephone: (202) 301-5509

*Attorneys for Plaintiffs and the Putative Class*

**Pro hac vice* application forthcoming

26

## <u>CERTIFICATION OF SERVICE</u>

We hereby certify that on we electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing portal.  We also certify that the foregoing is being electronically served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the Court's electronic filing portal.

_____
Gregg I. Shavitz
*Attorney for Plaintiffs and the Putative Class*