## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement Agreement") sets forth the full and final terms by which the Named Plaintiffs Lucinda Council, Ravynne Gilmore, Verna Maitland, and Hilari Ngufor ("Named Plaintiffs"), individually and on behalf of the Settlement Class (defined below), and Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and Bank of America Corporation (collectively, "Defendants," or the "Company") (Defendants together with the Named Plaintiffs, the "Parties") have settled and resolved all claims that have been or could have been raised in the mutually agreed upon Complaint that will be filed by the Named Plaintiffs in the U.S. District Court for the Middle District of Florida, Jacksonville Division for the purposes of settlement (the "Action").

## 1.   RECITALS AND BACKGROUND

WHEREAS, on October 9, 2020, Named Plaintiff Ravynne Gilmore filed a Charge of Discrimination against the Company with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination on behalf of herself and other similarly situated African-American Financial Advisors ("FAs"), Financial Advisor Development Program Trainees ("FADPs") (formerly known as Practice Management Development Trainees ("PMDs")), and Financial Solutions Advisors ("FSAs").

WHEREAS, on October 15, 2020, Named Plaintiff Hilari Ngufor filed a Charge of Discrimination against the Company with the EEOC alleging race discrimination on behalf of himself and other similarly situated African-American FAs and FADPs/PMDs.

WHEREAS, on September 22, 2020, Class Counsel (as defined below) sent Defendants a letter informing them of the Named Plaintiffs' claims and invited pre-litigation discussions to explore the possibility of an early resolution.

WHEREAS, after a series of exchanges, the Parties entered into a Tolling Agreement in November 2020 and agreed to retain an experienced third-party neutral, Mediator David Rotman, to assist them in settlement discussions.

WHEREAS, in preparation for the mediation, Defendants produced Human Resources and compensation data, as well as teaming and compensation policies to allow the Parties to engage in informed and good-faith settlement discussions.

WHEREAS, on May 25, 2021, July 27, 2021, and September 28, 2021, the Parties attended good-faith, arms'-length mediations facilitated by Mediator David Rotman.

WHEREAS, the Parties did not resolve the claims during the May 25, July 27, or September 28, 2021 mediation sessions, but they continued to meet and confer over the next several months in an effort to resolve the claims. Specifically, the Parties held telephone calls, exchanged emails, and conducted multiple videoconferences, including on March 3, 2022, March 29, 2022, and July 13, 2022, to discuss the scope of the proposed monetary and injunctive relief.

WHEREAS, the Named Plaintiffs will file a Complaint in the U.S. District Court for the Middle District of Florida, Jacksonville Division for the purposes of settlement in which the Named Plaintiffs will collectively allege on behalf of themselves and the Settlement Class Members (defined below) that African-Americans who are, or were, employed as FAs, FADPs/PMDs, and FSAs with the Company have been, and are, afforded fewer business opportunities than comparable White FAs, FADPs/PMDs, and FSAs. The Named Plaintiffs collectively allege on behalf of themselves and Settlement Class Members (defined below) that they have experienced, and do experience, race and/or color discrimination in aspects of their employment, including, but not limited to, in compensation, teaming or pooling opportunities, distribution of accounts, career advancement, work assignments, termination, and/or other terms and conditions of employment.

WHEREAS, Defendants deny the allegations in the Named Plaintiffs' Charges of Discrimination and in the Complaint, including that the Named Plaintiffs or Settlement Class Members (defined below) are entitled to any relief. Defendants further deny any liability under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 as amended ("Section 1981"), the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.*, Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290, *et seq.*, the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760, *et seq.*, or any other federal, state, or local statute, regulation, or principle of common law or equity, and specifically deny that the Company unlawfully discriminated against the Named Plaintiffs or any Settlement Class Members (defined below) on the basis of race and/or color. This Agreement is not, and shall not in any way be deemed to constitute, an admission or evidence of any wrongdoing or liability on the part of Defendants, nor of any violation of any federal, state, or local statute, regulation, or principle of common law or equity.

WHEREAS, Class Counsel (defined below) are experienced in litigating class action claims of the type involved in the Action.

WHEREAS, the Parties to this Agreement and their respective attorneys of record, taking into account the risks, uncertainties, and delay of litigation, as well as other relevant considerations, have concluded that it is in the best interest of all Parties to compromise and fully and finally settle the claims in the manner and upon the terms and conditions hereinafter set forth.

WHEREAS, the relief provided to the Named Plaintiffs and Settlement Class Members (defined below) and procedures for the distribution of relief provide a fair, speedy, and cost-effective settlement to the Settlement Class Members.

WHEREAS, Class Counsel (defined below) has analyzed and evaluated the merits of the claims asserted against Defendants and the impact of this Agreement on the Named Plaintiffs and Settlement Class Members (defined below). Based upon Class Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that if not settled now, future litigation may not result in any recovery, or might

result in recovery that is less favorable and that would not occur for several years, as well as recognizing that the non-monetary elements of this Agreement are significant, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and this Agreement is in the best interest of the Named Plaintiffs and the Settlement Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to the following terms and conditions:

## 2. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1 **Action.** "Action" means the civil action described above that will be filed on a date mutually agreed upon by the Parties in the U.S. District Court for the Middle District of Florida, Jacksonville Division.

2.2 **Complaint.** "Complaint" means the Complaint for the purposes of settlement described above and filed in the Action.

2.3 **Acceptance Period.** "Acceptance Period" means the forty-five (45) day period in which Settlement Class Members may object or opt out of the Agreement.

2.4 **Agreement.** "Agreement" or "Settlement" or "Settlement Agreement" means the terms and conditions set forth in this Settlement Agreement.

2.5 **Allocated Settlement Amount.** "Allocated Settlement Amount" means a payment from the Net Settlement Fund to each Settlement Class Member to be distributed by the Settlement Administrator from the Net Settlement Fund.

2.6 **Class Counsel or Plaintiffs' Counsel.** "Class Counsel" and "Plaintiffs' Counsel" shall mean Outten & Golden LLP ("O&G") and the Shavitz Law Group ("SLG").

2.7 **Class Period.** "Class Period" is defined as the period from November 23, 2016, through December 23, 2022.

2.8 **Court.** "Court" means the U.S. District Court for the Middle District of Florida, Jacksonville Division, where the Action will be filed for the purposes of settlement.

2.9 **Cy Pres Designee.** "Cy Pres Designee" means the Association of African American Financial Advisors or other third-party organization to be mutually agreed upon by the Parties.

2.10 **Days.** "Days" means business days (excluding federal holidays).

2.11 **Defendants.** "Defendants" means Merrill Lynch, Pierce, Fenner & Smith Incorporated

and Bank of America Corporation and their predecessors or successors in interest.

**2.12    Defendants' Counsel.**  "Defendants' Counsel" or "Defense Counsel" means Morgan, Lewis & Bockius LLP.

**2.13    Depository Bank.**  "Depository Bank" means Bank of America, N.A., which will receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Settlement Administrator.

**2.14    Effective Date.**  "Effective Date" of the Settlement means the date on which all of the following have occurred: (a) the Court has finally approved this Settlement Agreement and has signed and entered an order so indicating; (b) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (c) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing, *en banc* review, petitions for certiorari, or other appellate review) has been fully satisfied.

**2.15    Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**2.16    Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

**2.17    Financial Advisor.**  "Financial Advisor" or "FA" means a person who is or was employed as a financial advisor by Merrill Lynch, Pierce, Fenner & Smith Incorporated or Bank of America Corporation.

**2.18    Financial Advisor Development Program Trainee or Practice Management Development Trainee.**  "Financial Advisor Development Program Trainee" or "FADP" or "Practice Management Development Trainee" or "PMD" means a person who is or was employed as a financial advisor trainee by Merrill Lynch, Pierce, Fenner & Smith Incorporated or Bank of America Corporation.  "Financial Advisor Development Program Trainee" or "FADP" or "Practice Management Development Trainee" or "PMD" includes any person who is or was employed as a trainee in the Advisor Development Program.

**2.19    Financial Solutions Advisor**.  "Financial Solutions Advisor" or "FSA" means a person who is or was employed as a financial solutions advisor by Merrill Lynch, Pierce, Fenner & Smith Incorporated or Bank of America Corporation.  "Financial Solutions Advisor" or "FSA" includes any person who is or was employed as a trainee in the Advisor Development Program, including as a "Financial Solutions Advisor" or "Merrill Financial Solutions Advisor."

**2.20    Gross Settlement Fund.**  "Gross Settlement Fund" means the Nineteen Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00) transferred by the Company pursuant to Section 4 of this Settlement Agreement, including all interest

earned thereon, to be held, invested, administered, and disbursed pursuant to this Agreement.

**2.21   Named Plaintiffs.**  "Named Plaintiffs" means Lucinda Council, Ravynne Gilmore, Verna Maitland, and Hilari Ngufor.

**2.22   Net Settlement Fund.**  "Net Settlement Fund" means the "Gross Settlement Fund" minus Court-approved attorneys' fees and expenses and the fees and costs of administering the settlement by the Settlement Administrator.

**2.23   Notice or Notices.**  "Notice" or "Notices" means the Notice of Class Action, Proposed Settlement Agreement, and Settlement Fairness Hearing that is to be mailed directly to Settlement Class Members as approved by the Court, substantially in the form mutually agreed to by the Parties.

**2.24   Objector.**  "Objector" means an individual who properly and timely files an objection to this Agreement, but does not include any individual who opts out of this Agreement.

**2.25   Opt-out Statement.**  "Opt-out Statement" is a written signed statement that an individual Settlement Class Member has decided to opt out and not be included in this Agreement.

**2.26   Parties.**  "Parties" are the Named Plaintiffs and Defendants.

**2.27   Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Settlement Class Members.

**2.28   Programmatic Relief.**  "Programmatic Relief" means the commitments intended to improve the opportunities available to African-American FAs, FADPs/PMDs, and FSAs agreed to by the Parties and set forth in Section 4.5 of this Agreement.

**2.29   Released Claims.**  "Released Claims" or "Release" mean the claims released in Section 6 of this Agreement.

**2.30   Released Parties.**  "Released Parties" means Bank of America Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and any of its or their subsidiaries, related companies, affiliates, and successors, and all of their current, former, and future officers, directors, employees, assigns, agents, plans and plan trustees, independent contractors, shareholders, attorneys, and representatives, jointly and individually.

**2.31   Settlement Class Members.**  "Settlement Class Members" or "Settlement Class" means the class that the Parties jointly seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all African-American employees and former employees who held the position(s) at the Company of Financial Advisor ("FA"), Financial Advisor Development Program Trainee ("FADP") (formerly known as

5

Practice Management Development Trainee ("PMD")), and Financial Solutions Advisor ("FSA") at any time during the Class Period. "Settlement Class Members" and "Settlement Class" do not include any FAs, FADPs, PMDs, or FSAs who (i) did not pass the licensing exams required for the respective position; (ii) have executed a release of claims on or before the deadline for the Settlement Administrator to mail Notice to the Settlement Class releasing any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims; or (iii) have obtained a final judgment or determination concerning any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims.

**2.32**   **Settlement Administrator.**  "Settlement Administrator" means the third-party claims administration firm to be mutually agreed to and retained by the Parties to administer the Settlement pursuant to this Agreement and the orders of the Court.

## 3.   INITIAL PROCEDURAL ISSUES

**3.1**   **Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Action.

**3.2**   **Jurisdiction and Venue**.  The Parties agree that the Court has jurisdiction over the Parties and the subject-matter of the Action.  The Parties also agree that venue is proper. The Court shall retain jurisdiction of the Action for five (5) years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized in the Agreement that may be necessary to implement and enforce the relief provided therein.

**3.3**   **Retention and Responsibilities of the Settlement Administrator.**  The Settlement Administrator will be jointly selected by the Parties to distribute the Notices, attorneys' fees and costs, and settlement payments, and to otherwise administer the settlement.  The Settlement Administrator's fees and costs of administering the settlement shall be paid from the Gross Settlement Fund.  The Settlement Administrator will be responsible for distributing the Notices and payment to Settlement Class Members in accordance with the Court's Preliminary Approval Order, maintaining a website and email account to answer Settlement Class Member questions, collecting and verifying responses, and distributing settlement payments.

(A)   The Settlement Administrator will provide regular reports to Class Counsel and Defendants' Counsel, but no less frequently than every week, regarding the number of Notices distributed to Settlement Class Members, the number of Settlement Class Members, if any, who object to and/or opt out of the Settlement, the number of payments, and the dissemination of settlement payments.

(B)   Defendants agree to reasonably cooperate with the Settlement Administrator to facilitate Defendants' obligations in this Agreement, including to provide information to assist the Settlement Administrator in locating Settlement Class

Members, as specified in Section 5.1 below.

**3.4    Preliminary Approval Motion.**

(A)    The Parties will agree upon a form for written Notice of this Settlement Agreement to Settlement Class Members, subject to Court approval.

(B)    Class Counsel will file in Court on a date mutually agreed upon by the Parties, a Motion for Preliminary Settlement Approval and Incorporated Memorandum of Law, proposed Notice to Settlement Class Members, and Proposed Order ("Preliminary Approval Motion"), which is consistent with this Agreement. The Preliminary Approval Motion will seek to certify a settlement class, solely for the purposes of this Settlement Agreement.

(C)    The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt out of this Agreement or provide objections to this Agreement, which will be forty-five (45) days from the delivery of Notice to the Settlement Class Members, and for a Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date, but at least 30 days after the close of the Acceptance Period.

(D)    In the Preliminary Approval Motion, Class Counsel will seek to certify, solely for the purposes of this Settlement Agreement, a settlement class, with an opt-out right, and inform the Court of the intended process to obtain a Final Approval Order that will, among other things, seek to: (1) approve the Settlement as fair, adequate, and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the matter with prejudice; and (4) award Class Counsel fees and costs. If the Court denies the Preliminary Approval Motion, the Parties will work together in good faith to address the Court's concerns.

(E)    In the Preliminary Approval Motion, Class Counsel shall petition the Court for an order, pending a Final Approval Order, preliminarily enjoining each Settlement Class Member, including any members who make an irrevocable election to exclude themselves from the monetary relief provisions of the Settlement, from commencing, prosecuting, or maintaining in any court other than this Court any claim, action, or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision, or ruling in this matter in connection with this Settlement Agreement. Class Counsel shall further petition the Court for an order effective as of the date specified for Settlement Class Members to opt out of the Settlement, further enjoining any Settlement Class Member who has not made an irrevocable election to exclude themselves from the monetary relief provisions of the Settlement from commencing, prosecuting, or maintaining, either directly, representatively, or in any other capacity, claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims.

(F)     The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and all other aspects of the settlement approval process.

## 4.     SETTLEMENT TERMS

### 4.1     Settlement Amount.

(A)     This is a common fund settlement in which Settlement Class Members will be paid pursuant to the Allocated Settlement Amount.

(B)     Defendants agree to transfer, within thirty (30) days of the Effective Date of this Settlement, the Gross Settlement Amount of Nineteen Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00), which will be placed in a qualified settlement fund organized and existing under the laws of the State of Florida, intended by the Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *eq. seq.*  This payment is made to satisfy the claims of the Named Plaintiffs and the Settlement Class Members, as well as for the other purposes described in this Section. The Gross Settlement Amount shall constitute the total settlement cash outlay by Defendants in connection with (1) the resolution of this Action; (2) this Settlement Agreement; and (3) the dismissal of this Action.  This sum is inclusive of payment for:  (a) all amounts paid to Settlement Class Members; (b) all attorneys' fees and costs awarded by the Court, including those in connection with securing court approval of the Settlement Agreement, the claims process, and monitoring of the Settlement Agreement; (c) all costs in connection with administration of the Gross Settlement Fund, including, but not limited to, those related to notice, claims processing, legal advice obtained by the Fund Administrator relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of the awards, and preparation of the Fund's tax returns; and (d) applicable federal, state, and local income taxes (which are expected to be withheld from any amounts characterized as wages), all applicable FICA taxes (where the employee share of FICA taxes is expected to be withheld from any amounts characterized as wages), and all federal and state unemployment taxes or other social insurance or similar state or local taxes required by law to be withheld and/or paid by Defendants.  All federal, state, and local income taxes paid to the Fund will be calculated with reference to the expected total wages for the year.  Notwithstanding the foregoing, the costs for implementing the Programmatic Relief in Section 4.5 of this Agreement shall be paid by Defendants.  This commitment includes the funding of any work of the Labor Economist.

(C)     The Settlement Administrator shall pay itself its costs from the Gross Settlement Fund no later than ten (10) days after Defendants' transfer of the Gross Settlement Fund to the Depository Bank.

8

(D)     Within thirty (30) days of the last check going stale, any remaining uncashed amounts shall be distributed to a *Cy Pres Designee*.

**4.2     Class Definition.**

(A)     The Settlement Class is comprised of all African-American employees and former employees who held the position(s) at the Company of FA, FADP, PMD, or FSA during the Class Period.  The Settlement Class does not include any FAs, FADPs, PMDs, or FSAs who (i) did not pass the licensing exams required for the respective position; (ii) have executed a release of claims on or before the deadline for the Settlement Administrator to mail Notice to the Settlement Class releasing any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims; or (iii) have obtained a final judgment or determination concerning any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims.

**4.3     Settlement Class Member Monetary Relief.**

(A)     **Scope.**  Each Settlement Class Member will be eligible to receive a Monetary Award.

(B)     **Monetary Award.**  A settlement payment will be made to each eligible Settlement Class Member by the Settlement Administrator from the Net Settlement Fund. The monetary award available for each Settlement Class Member will be calculated by the Settlement Administrator based on an assignment of points to each Settlement Class Member according to the Settlement Class Member's length of tenure (e.g., weeks worked) between November 23, 2016 and the date of the Preliminary Approval Order as an FA, FSA, or PMD/FADP.  Fifty percent (50%) of the Net Settlement Fund shall be allocated to Settlement Class Members who worked as an FA during the Class Period. Fifty percent (50%) of the Net Settlement Fund shall be allocated to Settlement Class Members who worked as an FSA or PMD/FADP during the Class Period.

        (1)     Tenure points shall be allocated based on workweeks worked between November 23, 2016 and the date of the Preliminary Approval Order.

        (2)     The Settlement Administrator will total the points attributable to each Settlement Class Member between November 23, 2016 and the date of the Preliminary Approval Order and divide each Settlement Class Member's points by the total points to obtain the Settlement Class Member's share of the Net Settlement Fund.  The Settlement Administrator will multiply each Settlement Class Member's share by the Net Settlement Fund to determine the Allocated Settlement Amount.

9

(3)    Weeks are based on calendar weeks in the year, and Settlement Class Members will receive credit for the week if the Settlement Class Member was employed as an FA, PMD/FADP, or FSA for any part of that week, including if the Settlement Class Member was out on leave, or using sick or vacation days during the week.

(4)    The Settlement Administrator's determination shall be final. Defendants, Counsel for Defendants, and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Settlement Administrator.

(C)    **Tax Treatment of Settlement Payments.**

(1)    The Parties recognize that the monetary awards will be subject to applicable tax withholding and reporting, which will be handled as follows:

    i.    The Settlement Administrator shall serve as trustee of the Gross Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement, including the handling of tax-related issues and payments.

    ii.    The Parties agree that fifty percent (50%) of each Settlement Class Member's allocation shall be treated as wages and fifty percent (50%) for alleged emotional distress, interest, and punitive damages for tax purposes. The amounts paid for alleged emotional distress, interest, and punitive damages shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

    iii.    The Settlement Administrator shall be responsible for issuing settlement payments to each Settlement Class Member, less required withholdings and deductions (including Employer Payroll Taxes), and disbursing the settlement payments and IRS Forms, and for making all tax reporting, deposits, and withholdings with respect to all amounts payable.

    iv.    All federal, state, and local income tax withholding will be collected at the applicable rate. All FICA and federal and state unemployment taxes, and any state or local social insurance or similar taxes will be calculated after taking into account each Settlement Class Member's wages for the payment year, which will be separately paid by the Company (which information will be provided by Defendants to the Settlement Administrator within thirty (30) days before the settlement payments are made).

Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099-INT. The amounts paid for attorneys' fees and costs shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

v. The Settlement Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Taxes to appropriate taxing authorities and shall indemnify the Company for any penalty arising out of any failure to remit taxes to the appropriate taxing authorities, any failure to appropriately withhold taxes, or an incorrect calculation, and/or interest with respect to late payment of the same, unless such failure is the result of the Company's failure to fulfill its obligations in a timely manner. The Settlement Administrator will send the Company copies of the payroll tax and information returns that it files reporting these payments, as confirmation that the requisite withholdings were collected, employment taxes were paid, and IRS Forms and tax returns were filed.

vi. The Company shall have no withholding, reporting, or any other tax reporting or payment responsibilities with respect to the Settlement Fund or its distribution to the Settlement Class Members. The Settlement Administrator shall indemnify the Company against any liability relating to the Settlement Administrator's failure to pay timely any taxes, penalties, or other obligations relating to the payments or distributions from the Gross Settlement Fund.

vii. Class Counsel and Defendants' Counsel do not intend this Settlement Agreement to constitute legal or tax advice regarding any federal, state, or local tax issue. To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties. The tax issues for each Settlement Class Member are unique to him/her, and each Settlement Class Member is advised to obtain tax advice from his/her own tax advisor with respect to payment resulting from this Settlement.

**4.4    Attorneys' Fees and Costs.**

(A)    Fourteen (14) days after filing the Preliminary Approval Motion, Class Counsel

11

will request that the Court approve an award of attorneys' fees in the amount of one third of the Gross Settlement Fund, plus reasonable out-of-pocket costs and expenses, which, if approved by the Court will be deducted from the Gross Settlement Fund.

(B)    Attorneys' fees and costs shall be wired to Plaintiffs' Counsel by the Settlement Administrator from the Gross Settlement Fund no later than ten (10) days after Defendants' transfer of the Gross Settlement Fund to the Depository Bank.

(C)    Payments of attorneys' fees and costs pursuant to this Section shall be made without withholding and reported by the Settlement Administrator to the IRS and the payee under the payee's name and taxpayer identification number, which such payee shall provide for this purpose, on an IRS Form 1099.

**4.5    Programmatic Relief.**

(A)    **Purpose of the Programmatic Relief.**  The purpose of the Programmatic Relief set forth in this Agreement is to reinforce the Company's commitment to equal employment opportunity for all employees, irrespective of race, color, or any other category protected by federal, state, or local law, and to foster a workplace culture that embraces diverse perspectives and is inclusive of all employees.

(B)    **Duration of the Programmatic Relief.**  The Parties agree that the Programmatic Relief embodied in this Agreement shall be in effect for a period of five years (60 months) from the date of the Final Approval Order.  Nothing in this Agreement prevents Merrill Lynch from extending the Programmatic Relief in this Agreement beyond five years (60 months).  Nor does anything in this Agreement require Merrill Lynch to extend the Programmatic Relief in this Agreement beyond five years (60 months).

(C)    **Diversity and Inclusion Training.**  Merrill Lynch will make available Diversity & Inclusion training to Merrill Lynch Wealth Management employees, including managers.  The training shall include, to the extent permitted by law, the following topics: (1) preventing employment discrimination and harassment; (2) how to recognize implicit or unconscious bias; and (3) how to create an inclusive work environment that will evaluate employees and candidates fairly.  The format of the Diversity & Inclusion training may vary from jurisdiction to jurisdiction depending on the relevant legal requirements.

(D)    **Analysis of Diversity Metrics.**  Merrill Lynch will conduct a confidential and attorney-client privileged analysis of the following diversity metrics for African-American financial advisors on at least an annual basis:  (1) rates of African Americans entering and exiting any financial advisor training program that prepares individuals to be fully licensed financial advisors; (2) the rates of African American financial advisor hiring and retention; and (3) the ability of African American financial advisors to grow their business, including growth in

12

production credits, households, and revenue.  The purpose of analyzing the diversity metrics is to facilitate the programmatic relief herein.  Merrill Lynch is committed to these goals and has considered the significant input from Class Counsel on these topics throughout the settlement phase of this case.

(E)     **Team Approval.**  Merrill Lynch will continue to maintain its practice whereby prior to approving a team, Wealth Management managers will allow financial advisors to consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct that decisions to team or not to team may not be made on the basis of a legally protected characteristic.  To facilitate this policy, Merrill Lynch will maintain its current optional database that identifies individuals who are interested in joining or forming a team.

(F)     **Non-Binding Team Dispute Resolution.**  Merrill Lynch will continue to offer an internal dispute resolution process concerning any disputes related to (i) team dissolution; and (ii) account redistributions.

(G)     **Development Opportunities.**  Merrill Lynch will continue developing workplace initiatives designed to attract diverse financial advisors and to retain them, and enhance their success, including targeted mentoring and training. Training and mentoring may include but is not limited to training conference calls, online courses, and in person seminars. Merrill Lynch will continue to make available an FA Playbook for financial advisors that includes tips and skills for navigating various facets of Wealth Management, Techniques, and How To.  Merrill Lynch has and will continue to consider the significant input from Class Counsel on these topics throughout the settlement phase of this Action.

(H)     **Further Actions.**   Merrill Lynch shall review its current and past diversity programs and initiatives and determine whether it is necessary to augment these programs and initiatives in ways that better (1) promote equal employment opportunities; (2) foster recruitment, sponsorship and allyship programs, and employment advancement; (3) provide support for attendance at Diversity Events (e.g., ELC, Odyssey Media); (4) provide support for attendance at Industry Events (e.g., Barrons, IMCA); and (5) continue to create and support employee resource and affinity groups that provide paid time given for participation.

(I)     **Appointment of a Labor Economist.**  Merrill Lynch will continue to retain a Labor Economist to perform the Pay Equity Analysis described in this Section. The Labor Economist shall be external to Merrill Lynch, although he/she will be reasonably compensated by Merrill Lynch.  In the event that the Labor Economist becomes unable or unwilling to serve, he/she shall be replaced by Merrill Lynch within thirty (30) days.

The Labor Economist shall perform the Pay Equity Analysis at the direction of Merrill Lynch's legal counsel on an annual basis, and at all times will work under the Attorney-Client Privilege for the purpose of helping to provide legal advice to

Merrill Lynch.  The Labor Economist can make reasonable requests for non-privileged documents and information consistent with the scope of his/her responsibilities.  The Labor Economist will sign a Confidentiality Agreement, and when assessing and using Merrill Lynch documents and information, the Labor Economist will take all steps necessary to ensure the appropriate privilege, confidentiality, and compliance with regulatory requirements.

In performing the Pay Equity Analysis, the Labor Economist may use any independent variables/controls that he or she deems appropriate, including, but not limited to, months employed, year, years in company, years in job, potential prior years of experience, group name, and job code.  The Labor Economist may also group job titles together as he or she deems appropriate.

**Pay Equity Analysis.**  The Labor Economist shall conduct an annual analysis relating to the compensation paid to African-American and to White financial advisors and trainees.

## 5.   CLASS PROCEDURAL ISSUES

### 5.1   Notice to Settlement Class Members.

(A)   **Class List.**  Defendants will provide to the Settlement Administrator a class list containing the following information for each Settlement Class Member: names, social security number, last known address, last known telephone number, dates of employment in the covered position, and job title as soon as practicable, but no later than thirty (30) days from Preliminary Approval of the Settlement.  The Settlement Administrator shall utilize Settlement Class Members' social security numbers only for the purpose of locating and identifying Settlement Class Members.  The Settlement Administrator will maintain the class list and the information contained therein and derived therefrom in a confidential manner, and shall not provide such list or other information to any other entity or person without prior written consent of Defendants.  After receipt of the Settlement Class Members' information from Defendants, the Settlement Administrator will perform a search and update using the National Change of Address Database to correct any known or identifiable address changes for Settlement Class Members.

(B)   **Notice Procedure.**  Within thirty (30) days of receipt of the Settlement Class Members' information from Defendants, the Settlement Administrator shall cause a copy of the Notice, containing information instructing Settlement Class Members of their right to object or opt out of the Agreement, to be distributed, as approved by the Court, by first class United States Mail to the Settlement Class Members.  The Parties agree that the Notice, sent by first class United States Mail, constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice of the pendency of the proposed Settlement and a final approval hearing to all persons entitled to notice in full compliance with due process under the United States Constitution and state law.

14

(C)     **Acceptance Period.**  Any Settlement Class Member sent a Notice that is not returned as undeliverable shall have forty-five (45) days from the date of mailing or any re-mailing by the Settlement Administrator to object to or opt out of the Agreement pursuant to the instruction set forth in Sections 5.2 and 5.3 and as instructed in the Notice.

(D)     The Settlement Administrator will take all reasonable steps to obtain the correct address of any Settlement Class Members or potential Settlement Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt to re-mail the Notice to the updated address.   The Settlement Administrator will notify Class Counsel and Defendants' Counsel if any Notice sent to a Settlement Class Member or potential Settlement Class Member is returned as undeliverable after the first mailing, as well as if any such Notice is returned as undeliverable after any subsequent mailing(s).

(E)     The Settlement Administrator shall cause settlement checks to be distributed to Settlement Class Members no later than ten (10) days after Defendants' transfer of the Gross Settlement Fund to the Depository Bank.

(F)     Each Settlement Class Member shall have ninety (90) days from the date of mailing by the Settlement Administrator to deposit or cash his or her settlement check.

(G)     The Settlement Administrator will send out a reminder postcard, by first class United States Mail halfway through the ninety (90) day period, reminding Settlement Class Members of their opportunity to cash their settlement checks.

(H)     Within thirty (30) days of the last check going stale, any remaining uncashed amounts shall be distributed to a *Cy Pres Designee*.

## 5.2     Settlement Class Member Opt-Out Statements.

(A)     Any Settlement Class Member who chooses to opt out of the Settlement as set forth in this Agreement must mail via first class United States Mail, postage prepaid, a written, signed statement to the Settlement Administrator that states their name, address, email address(es), and telephone number(s) and that states, "I opt out of the Merrill Lynch Financial Advisor Race Discrimination Settlement.  I understand that by opting out, I will receive no money from the Settlement Agreement," or an alternate, unambiguous statement indicating an intent to opt out of the Settlement ("Opt-out Statement").

(B)     For each Settlement Class Member who properly and timely opts out of the Settlement Agreement, the allocated award and pro rata share of attorneys' costs and fees shall revert to Defendants.

15

(C)    The end of the time period to opt out of the Settlement ("Opt-out Period") shall be forty-five (45) days after the day on which the Settlement Administrator mails a Notice to a Settlement Class Member.

(D)    The Settlement Administrator will provide the Parties with copies of all Opt-out Statements as soon as they are received by the Settlement Administrator.  At the request of the Parties, and in preparation of the declaration that the Settlement Administrator will submit as part of the Final Approval Motion, the Settlement Administrator will send a list of the names of all individuals who submitted Opt-out Statements to the Parties.  The final list will be submitted by Plaintiffs' Counsel, with redaction of any personal identifying information, along with the declaration of the Settlement Administrator, as an exhibit to the Final Approval Motion.  The Settlement Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

(E)    Any Settlement Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the Settlement and the terms of this Agreement, and will be eligible to participate as a Settlement Class Member.

(F)    If the number of Settlement Class Members who properly and timely opt out of the Settlement equals or exceeds twelve percent (12%) of the Settlement Class Members, then Defendants shall have the right, for thirty (30) days after the deadline for Settlement Class Members to opt out, to either withdraw from and fully terminate this Settlement Agreement by providing written notice to Class Counsel and the Court, or not to withdraw from this Settlement Agreement and take the opt out credit described in this Section.  The opt out credit to which Defendants are entitled shall be a pro rata share of the Settlement Fund based on the number of Settlement Class Members who have opted out in relation to the total number of Settlement Class Members, including the pro rata portion of attorneys' costs and fees associated therewith.  Regardless of the number of Settlement Class Members who opt out, Defendants shall also have no obligation to pay the employer's share of taxes and contribution pertaining to such opt outs.

(G)    If Defendants exercise their option to withdraw from the Settlement, any judgment or orders entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  The Settlement Fund shall be returned to Defendants, including the interest earned by the Settlement Fund through the date of termination (after deducting all costs of providing Notice to the Settlement Class Members that were paid or incurred by the Settlement Administrator as to the date of the termination).

(H)    The Named Plaintiffs shall not be permitted to submit Opt-out Statements.

**5.3    Objections to Settlement.**

(A)    Settlement Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Settlement Administrator via first class United States Mail, postage prepaid, and be received by the Settlement Administrator by a date certain forty-five (45) days after the Settlement Administrator mails a Notice to such Settlement Class Member.  The statement must include all reasons for the objection; and any reasons not included in the statement will not be considered. The statement must also include the name, address, email(s), and telephone number(s) for the Settlement Class Member making the objection.  No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served his or her objection(s) in writing forty-five (45) days after the Notice was mailed to the Settlement Class Member.  The Settlement Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel as soon as they are received.  The final list will be submitted by Plaintiffs, with redaction of any personal identifying information, along with the declaration of the Settlement Administrator, attached to the Final Approval Motion.

(B)    An individual who files objections to the Settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing in his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time. A Settlement Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**5.4    Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)    At the time established by the Court via the Preliminary Approval Motion, or on a date mutually agreed upon by the Parties, Plaintiffs' Counsel will file with the Court a Motion for Final Approval of Settlement, and a Proposed Order Approving the Settlement and Dismissing the Action with prejudice ("Final Approval Motion") that is consistent with this Agreement.

(B)    At the Fairness Hearing and in the Motion for Final Approval of Settlement, Class Counsel will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out of the Settlement; (3) order that attorneys' fees and costs be paid to Class Counsel; (4) order the dismissal with prejudice of all claims

17

asserted or that could have been asserted in the Action and the claims of all Settlement Class Members who did not opt out; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction as necessary for the purpose of facilitating the Settlement and other relief pursuant to this Agreement.

If the Court does not enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside on appeal, the Parties will work together in good faith to address the Court's concerns.

## 6.     RELEASE

**6.1     Release.**

(A)     **Scope of Release**.  By operation of the entry of Final Approval, Named Plaintiffs and all Settlement Class Members who do not properly and timely opt out of this Settlement (including their heirs, administrators, representatives, executors, successors, and assigns), fully, finally, and irrevocably waive, release, and discharge the Released Parties from any and all actions, causes of action, suits, demands, liabilities, and claims of any nature whatsoever, whether known or unknown, arising at any time up to and including the date of the Preliminary Approval Order and arising out of the same factual predicate as the class claims asserted in the Complaint.  Specifically included in this release are any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences, or nucleus of operative facts that form the basis of the class claims asserted in Complaint, including, but not limited to, claims for race and/or color discrimination under Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, local, or common law statute, regulation, or principle of common law or equity that may apply to such discrimination in employment or employee benefit claims.  Furthermore, this Release includes claims that were or could have been asserted for monetary damages, injunctive, declaratory, or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, local, or common laws or regulations relating to or arising out of the same transactions, series of connected transactions, occurrences, or nucleus of operative facts that form the basis of the class claims set forth in the Complaint.  By way of example only, and without any intent to limit the scope of the release, the Settlement Class Members will release all claims in the Complaint and all claims, whether known or unknown, for discrimination, harassment, and retaliation relating to compensation, training, deferred compensation, incentive compensation, long-term contingent awards, retention bonus payments, production, assets, production credits, account distributions, team or pool formation and dissolutions, strategic partnership formation and dissolutions, the allocation of leads and/or referrals, the allocation of business opportunities, promotion, termination, and any pay disparity in

18

existence up to the date of Preliminary Approval. Termination and promotion claims for race and/or color discrimination arising out of low production, failure to satisfy position requirements, failure to satisfy requirements of the training program, production-related reductions-in-force, other production-based performance-related terminations, and any claims for constructive discharge shall also be released.

(B)     Every Named Plaintiff and Settlement Class Member shall be deemed to and shall have knowingly and voluntarily waived, released, discharged, and dismissed the Released Claims, as applicable, with full knowledge of any and all rights that each has, and hereby assumes the risk of any mistake in fact in connection with true facts involved, or with regard to any facts which are now unknown to each.

(C)     The Parties and Settlement Class Members acknowledge that the covenants and promises made by the Company herein constitute adequate consideration in exchange for the Release.

**6.2     Waiver of Unknown Claims.**  Settlement Class Members and Named Plaintiffs who do not properly and timely opt out (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights, and benefits conferred under or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to, Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**6.3     Materiality of the Release.**  The terms of the Release are a material part of this Settlement Agreement and are hereby incorporated as if fully set forth in this Settlement Agreement.  If this Release is not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason, then the Release shall terminate *nunc pro tunc* and be of no force and effect.

## 7.     GOVERNMENT EXCEPTION

**7.1     Reports to Government Entities.**  Nothing in this Agreement, including the Release of Claims, restricts or prohibits any Settlement Class Member, Named Plaintiff, or Plaintiffs' Counsel from initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization, or any other governmental, law enforcement, or regulatory authority, regarding this Agreement and its underlying facts and circumstances, or any reporting of, investigation

into, or proceeding regarding suspected violations of law.  Settlement Class Members, Named Plaintiffs, or Plaintiffs' Counsel are not required to advise or seek permission from the Company before engaging in any such activity.  Settlement Class Members, Named Plaintiffs, or Plaintiffs' Counsel recognize that, in connection with any such activity, they must inform such authority that the information they are providing is confidential.  Despite the foregoing, Settlement Class Members or Named Plaintiffs are not permitted to reveal to any third party, including any governmental, law enforcement, or regulatory authority, information they came to learn during the course of their employment with the Company that is protected from disclosure by any applicable privilege, including, but not limited to, the attorney-client privilege, attorney work product doctrine, and/or other applicable legal privileges.  The Company does not waive any applicable privileges or the right to continue to protect its privileged attorney-client information, attorney work product, and other privileged information.  Additionally, Settlement Class Members, Named Plaintiffs, or Plaintiffs' Counsel recognize that their ability to disclose information may be limited or prohibited by applicable law and the Company does not consent to disclosures that would violate applicable law.  Such applicable laws include, without limitation, laws and regulations restricting disclosure of confidential supervisory information[1] or disclosures subject to the Bank Secrecy Act (31 U.S.C. §§ 5311-5330), including information that would reveal the existence or contemplated filing of a suspicious activity report. Settlement Class Members and Named Plaintiffs are waiving their right to receive any individual monetary relief resulting from any such claims that would otherwise be released under the terms of this Agreement, regardless of whether they or another party have filed them, and in the event any Settlement Class Member or Named Plaintiff obtains such monetary relief, the Company will be entitled to an offset for the payments made pursuant to this Agreement, except where such limitations are prohibited as a matter of law.  Whistleblower awards from the SEC are specifically exempted from this provision.

## 8.   NO ADMISSION, NO DETERMINATION

8.1   This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any party in this Action.  By entering into this Agreement, Defendants do not admit or concede, expressly or impliedly, but deny that they have in any way violated Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, or local statute, regulation, or principle of common law or equity.  Neither the Court, nor any other court, has made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Action.

8.2   Nothing in this Settlement Agreement, nor any action taken in the preparation or implementation thereof, is intended by the Parties to, nor shall any of the foregoing, constitute or be introduced, be used, or be admissible in any way in this Action or in any

---

[1] Confidential supervisory information includes any information or materials relating to the examination and supervision of the COMPANY by applicable bank regulatory agencies, COMPANY materials responding to or referencing non-public information relating to examinations or supervision by bank regulatory agencies, and correspondence to or from applicable banking regulators.

other judicial, arbitral, administrative, investigative, or other proceeding as evidence of discrimination, harassment, or retaliation, or as evidence of any violation of Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, or local statute, regulation, or principle of common law or equity.  Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement or to implement any orders or judgments of the Court entered into in connection herewith.

## 9.    TERMINATION OF SETTLEMENT

**9.1**    In the event that (i) this Settlement Agreement is not approved in its entirety by the Court, excluding Court-ordered modifications that Defendants determine in their reasonable and good-faith judgment not to be material modifications; (ii) the Defendants exercise their option to withdraw from the Settlement Agreement; (iii) this Settlement Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; or (iv) Judgment does not become a Final Judgment, then no payments shall be made by Defendants to anyone in accordance with the terms of this Settlement Agreement, and the parties will each bear their own costs and fees with regard to the Action, the Settlement, and efforts to obtain Court approval.  In such events, this Settlement Agreement (except for this Section and those provisions relating to No Admission, No Determination, and Confidentiality, set forth in Sections 8, 10) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Parties, and any judgment or orders entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  No party shall be deemed to have waived any procedural or substantive claims, objections, rights, defenses, legal arguments, or legal positions, including, but not limited to, claims or objections to class certification and claims and defenses on the merits.  The Parties agree that they retain these rights and will not take any positions to the contrary.  Neither this Settlement Agreement, nor the Court's Preliminary Approval Order or Final Approval Order shall be admissible in this Action or in any other judicial, arbitral, administrative, investigative, or other proceeding regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement).  This Settlement Agreement will not be considered an admission of liability by Defendants.

**9.2**    No order of the Court reducing the amount of any attorneys' fees or costs to be paid to Class Counsel shall constitute grounds for cancellation or termination of this Settlement Agreement or grounds for limiting any other provision of the Judgment.

## 10.    CONFIDENTIALITY

**10.1**    **Confidentiality of Settlement Negotiations**.  Other than necessary disclosures made to the Court, the content of the Parties' settlement negotiations and all related information shall be held confidential by Class Counsel and Defense Counsel.

**10.2**    **Public Comment**.  The Parties further agree that they shall not make any comment(s) to the media regarding this Action or any of the claims related to this Action, either

affirmatively or in response to a media inquiry.

**10.3** **Documents and Information Produced By Defendants' Counsel and Class Counsel**. All proprietary and confidential documents, data, or other information that have previously been provided to either Defendants' Counsel or Class Counsel as of the date of Preliminary Approval, or which were produced by Defendants' Counsel or Class Counsel pursuant to this Settlement Agreement, shall, unless otherwise agreed to, be treated as, and thereafter remain, confidential. Nothing in this Paragraph shall preclude any party from responding to a subpoena or court order; provided, however, that the party against whom such discovery is sought or such subpoena or order is directed agrees to provide prompt notice in writing and a copy of the same by overnight mail and electronic mail to counsel for the other party in this Settlement Agreement.

**11.** **INTERPRETATION, PUBLICITY, AND ENFORCEMENT**

**11.1** **Cooperation Between the Parties; Further Acts.** Plaintiffs shall use reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Parties shall reasonably cooperate with each other, and each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**11.2** **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Settlement Agreement does not impose any obligations on the Parties beyond the terms and conditions stated herein.

**11.3** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Settlement Class Members, their representatives, heirs, dependents, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors, and assigns. This Settlement Agreement shall not inure to the benefit of any third party.

**11.4** **Arms'-Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**11.5** **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**11.6** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not

intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**11.7    Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Florida without regard to its conflict of laws principles.

**11.8    Enforcement**. Enforcement of this Settlement Agreement shall be prosecuted by Class Counsel or Defense Counsel only, not by third parties. Class Counsel shall meet and confer with Defense Counsel prior to commencement of any enforcement proceedings.

**11.9    Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**11.10   Waivers, Modifications, or Amendments in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid and binding unless in writing, signed by or on behalf of Plaintiffs and Defendants by persons with the requisite authority, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.

**11.11   Failure to Insist Upon Strict Compliance**. Any failure by a Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**11.12   When Agreement Becomes Binding; Counterparts.** This Agreement shall become valid and binding upon its complete execution other than as to any act or obligation that is required or contemplated to occur prior to the Court's decision whether to preliminarily or finally approve the settlement. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**11.13   Facsimile and Email Signatures.** Any signature, including an electronic signature, made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

*[Remainder of page left blank intentionally]*

**WE AGREE TO THESE TERMS,**

Dated: _____May 24_____, 2024

**OUTTEN & GOLDEN LLP**

By: _____

       Adam T. Klein
       Chauniqua D. Young
       685 Third Avenue, 25th Floor
       New York, NY 10017
       atk@outtengolden.com
       cyoung@outtengolden.com

*Attorneys for Named Plaintiffs and the Class*

Dated: _____May 24, 2024

**SHAVITZ LAW GROUP, P.A.**

By: _____

       Gregg I. Shavitz
       Paolo Meireles
       951 Yamato Rd., Suite 285
       Boca Raton, FL 33431
       gshavitz@shavitzlaw.com
       pmeireles@shavitzlaw.com

*Attorneys for Named Plaintiffs and the Class*

Dated: MAY 23, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

By: _Sam Shaulson_
     Sam S. Shaulson
     600 Brickell Avenue, Suite 1600
     Miami, FL 33131-3075
     sam.shaulson@morganlewis.com

     Grace E. Speights
     1111 Pennsylvania Avenue, NW
     Washington, DC 20004-2541
     grace.speights@morganlewis.com

     Michael S. Burkhardt
     2222 Market Street
     Philadelphia, PA 19103-3007
     michael.burkhardt@morganlewis.com

*Attorneys for Defendants*