United States District Court
Middle District of Florida
Jacksonville Division

LUCINDA COUNCIL, ET AL.,


**Plaintiffs,**


**v.**                                    **NO. 3:24-CV-534-WWB-LLL**


MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, ET AL.,


**Defendants.**

---

### Report and Recommendation

Before the Court are Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, doc. 2, and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs and Memorandum in Support, doc. 10 (collectively, "Motions"). In support of the Motions, and in response to two orders from the undersigned, docs. 21 & 23, the parties submitted several supplemental filings. Docs. 22, & 27-29.

In their motion for preliminary approval of class action settlement, plaintiffs ask the Court for the following: (1) to certify the proposed settlement class for settlement purposes alone, (2) to approve the Settlement Agreement preliminarily, (3) to permit the proposed Notice of Class Action, proposed Settlement Agreement, and Settlement Fairness Hearing, (4) to appoint plaintiffs as class representatives and Outten & Golden LLP (O&G) and Shavitz Law Group, P.A (Shavitz) as class counsel, (5) to

schedule the fairness hearing, and (6) to enter the proposed Preliminary Approval Order. Doc. 2 at 1.

In their motion for attorneys' fees and costs, plaintiffs ask the Court for the following: (1) to approve plaintiffs' request for attorneys' fees in an amount equal to one-third (33.3%) of the gross settlement amount ($6,583,500), and (2) to approve plaintiffs' request for a separate award of reimbursement of costs reasonably incurred in the prosecution and resolution of this matter ($92,280.18). Doc. 10 at 1-2.

The Motions have been referred to me for a report and recommendation regarding an appropriate resolution. For the reasons discussed below, the undersigned recommends that: (1) the motion for preliminary approval of class action settlement, doc. 2, be granted; and (2) the motion for attorneys' fees and costs, doc. 10, be denied without prejudice because it is premature.

## Background

Plaintiffs Gilmore and Council initiated this action in the Eastern District of Michigan on July 2, 2021. *See Gilmore, et al. v. Merrill Lynch, Pierce, Fenner & Smith*, No. 21 Civ. 11553, ECF No. 1 (E.D. Mich. July 2, 2021). On November 22, 2022, plaintiffs Gilmore and Council dismissed that action. *Id.*, ECF No. 21. Shortly thereafter, plaintiffs Gilmore and Council, along with plaintiffs Maitland and Ngufor, filed an action in the Fifteenth Judicial Circuit of Florida. *See Council et al. v. Merrill Lynch, et al.*, No. 50-2022-CA-012658, Doc. 3 (Fla. Cir. Ct.), (filed Dec. 23, 2022). Plaintiffs dismissed the Florida state court action on May 6, 2024. Doc. 59. Plaintiffs then filed the operative complaint in this Court on May 24, 2024, doc. 1; the motion for

2

preliminary approval of class action settlement was filed on the same day, doc. 2; and the motion for attorneys' fees and costs was filed on June 7, 2024, doc. 10.

Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and 42 U.S.C. § 1981, alleging "intentional discrimination" (Count One) and "disparate impact discrimination" (Count Two), doc. 1 at 8-9. Plaintiffs argue that defendants paid black[1] employees working as financial advisors, financial advisor development program trainees, and financial solutions advisors (collectively, "financial advisors") less than their white counterparts and promoted them less frequently. *Id.* at 2.

Plaintiffs contend defendants' nationwide offices follow uniform compensation, employment, and promotion policies, and these work procedures disproportionately affect black financial advisors. *Id.* ¶¶ 18-20. Specifically, plaintiffs allege defendants excluded black financial advisors from pay promotion opportunities; failed to include black employees on certain teams, account distributions, and leads; and adopted policies having a disparate impact on black financial advisors. *Id.* ¶ 20.

Although both parties agreed to the proposed Settlement Agreement (Agreement), defendants deny the claims and allegations brought by plaintiffs. Doc. 2 at 5. Defendants maintain they treat their employees fairly and provide equal opportunities for compensation regardless of race. *Id.* Thus, the Agreement does not

---

[1] Although the complaint describes proposed class members as "African American," this Order uses the term "black," which denotes race rather than ethnicity.

3

constitute "an admission or evidence of any wrongdoing or liability" on defendants'

behalf. Doc. 2-2 at 2.

### The Proposed Class Settlement Agreement

The parties define the "Settlement Class Members" as:

> All [black] employees and former employees who held the
> position(s) at the Company of FA (financial advisors), FADP
> (financial advisor development program trainees), PMD (FADPs
> formerly known as Practice Management Development Trainees),
> or FSA (Financial Solutions Advisors) at any time from November
> 23, 2016 through December 23, 2022. The Settlement Class does
> not include any FAs, FADPs, PMDs, or FSAs who (i) did not pass
> the licensing exams required for the respective position; (ii) have
> executed a release of claims on or before the deadline for the
> Settlement Administrator to mail Notice to the Settlement Class
> releasing any claims that would or could have been alleged in the
> Action, including race and/or color discrimination, harassment,
> or retaliation claims; or (iii) have obtained a final judgment or
> determination concerning any claims that would or could have
> been alleged in the Action, including race and/or color
> discrimination, harassment, or retaliation claims.

Doc. 2-2 §§ 2.31, 4.2.

According to the Agreement, defendants will pay a gross settlement amount of

$19,950,000.[2] *Id.* at 8. These funds will account for the money paid to class members,

attorneys' fees and costs awarded by the Court, costs connected to the administration

of the Gross Settlement Fund, and all applicable taxes required by law to be paid or

withheld by defendants. *Id.*

---

[2] The settlement fund will be divided in half—with fifty percent allocated to those
employed with the title of "financial advisor" and fifty percent for those employed with the
title of "financial advisor, development program trainee, or financial solutions advisor." *Id.* §
4.3(B).

The Agreement states the settlement administrator will calculate each class member's monetary award based on a point system using the member's tenure length as a financial advisor between November 23, 2016, and the date of the preliminary approval order. *Id.* § 4.3(B). According to the Agreement, points would be assigned according to workweeks—based on calendar weeks in the year—within the specified time frame. *Id.* §§ 4.3(B)(1)-4.3(B)(2). Class members would earn credit for the week if defendants employed the member as one of the designated financial advisors for any part of that week—even if the class member was on leave or using sick or vacation days during that time. *Id.* §§ 4.3(B)(3). Next, the settlement administrator will "total the points attributable to each Settlement Class Member . . . and divide each Settlement Class Member's points by the total points to obtain the Settlement Class Member's share of the Net Settlement Fund." *Id.* § 4.3(B)(2)

Further, plaintiffs' counsel requests the Court award one-third of the total settlement fund as attorneys' fees, in addition to "reasonable out-of-pocket costs and expenses" that, if approved, would also be deducted from the settlement fund. *Id.* § 4.4(A).

Lastly, the Agreement lays out programmatic changes for defendants to implement that "reinforce the Company's commitment to equal employment opportunity for all employees . . . and to foster a workplace culture that embraces diverse perspectives and is inclusive of all employees." *Id.* § 4.5(A). Defendants would be required to maintain these changes for five years following the final approval order, which will include diversity and inclusion training for employees, a confidential

analysis of diversity metrics for black financial advisors at least annually, and the development of workplace initiatives to bring and retain diverse financial advisors. *Id.* §§ 4.5(B)-4.5(I). The Agreement also requires Merrill Lynch to continue its team approval practices, maintain its internal-dispute-resolution process, and perform annual pay equity analysis. *Id.*

Following preliminary approval of the Agreement, defendants must provide the settlement administrator with contact information for the class list. *Id.* § 5.1(A). The settlement administrator will provide notice to the class members via mail and the contact must occur within thirty days after receiving the class list from defendants; the notice will describe the steps for the members to accept, opt out, or object to the settlement. *Id.* §§ 5.1, 5.2, 5.3.

## Analysis

### I.    Standing

Under Federal Rule of Civil Procedure 23(e), the claims of a proposed class "may be settled . . . only with the court's approval[,]" and district courts have broad discretion over class actions. Fed. R. Civ. P. 23(e); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1266 (11th Cir. 2021).

Before approving a proposed settlement, however, the Court must first evaluate whether the named plaintiffs have standing. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023). In the Eleventh Circuit, the following must be satisfied for Article III standing: "1) the plaintiff has experienced an injury that is concrete and particularized and actual or imminent, 2) the defendant's conduct is the cause of the

plaintiff's injury, and 3) a decision by the court would likely redress the plaintiff's injury." *Id.* (citing *Lujan v. Defs. of Wildlife*, 505 U.S. 555, 560-61 (1992)).

"A plaintiff who seeks to represent a class in a private Title VII suit must have standing to raise the class' claims and must satisfy the procedural requirements of Title VII." *Carter v. W. Pub. Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000). Under the "single-filing rule," Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the unlawful discriminatory act and, "[a]s long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." *Griffin v. Dugger*, 823 F.2d 1476, 1492 (11th Cir. 1987). This rule encompasses two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective. . . . Second, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1011-12 (11th Cir. 1982).

Here, plaintiff Gilmore timely filed a charge of discrimination with the EEOC on October 9, 2020, alleging "class-based race discrimination" claims under Title VII, 42 U.S.C. § 1981, and related state laws against defendant Merrill, on behalf of herself and other similarly situated black financial advisors. Doc. 22 at 2. Plaintiff Gilmore alleged facts in the EEOC submission that form the basis of the operative complaint, *Id.* at 3, including alleging that as a black financial advisor, plaintiff Gilmore was systematically excluded from "teaming" opportunities, suffered a compensation

disparity resulting from reduced access to lucrative leads, and suffered internal disadvantages from defendant's failure to assign formal mentors. *Id.* at 3-4.

Because the allegations in the operative complaint mirror those in plaintiff Gilmore's charge, I find this lawsuit properly filed under the single-filing rule. *See Calloway v. Partners Nat. Health Plans,* 986 F.2d 446, 449 (11th Cir. 1993).

Plaintiff Gilmore, along with plaintiff Council, thereafter filed a lawsuit against defendant in the Eastern District of Michigan on July 2, 2021. *See Gilmore, et al. v. Merrill Lynch, Pierce, Fenner & Smith*, No. 21 Civ. 11553, ECF No. 1 (E.D. Mich. July 2, 2021). Plaintiff Gilmore received a right to sue letter on September 13, 2021. Doc. 29 at 4-5. Despite filing the Eastern District of Michigan action *prior* to receiving the right to sue letter, the undersigned finds that equitable modification is appropriate here to satisfy Title VII's requirement that a lawsuit be filed within 90-days *of receipt* of a right to sue letter because plaintiff Gilmore received the letter while the Eastern District of Michigan action was pending. *See, e.g., Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1219 (5th Cir. 1982) (per curiam) ("We hold that the receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending, satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII."), *cert. denied*, 459 U.S. 1105 (1983); *Williams v. Washington Metropolitan Area Transit Authority*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983) ("Receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court.").

## II.    Conditional Certification of the Settlement Class

Once the standing requirement is satisfied, the Court may assess the conditional certification of the settlement class. "A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-cv-100-J-39JBT, 2019 WL 11093815, at *1, *2 (M.D. Fla. Apr. 4, 2019).[3] Certification of a class is appropriate when "'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' and that 'the questions of law or fact common to class members predominate over any questions affecting only individual members' through 'evidentiary proof.'" *Green-Cooper*, 73 F.4th at 888 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

Plaintiffs must meet the prerequisites of Rule 23(a) and one requirement of Rule 23(b) to earn class certification. The proposed class must also be "adequately defined and clearly ascertainable." *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). The Rule 23(a) requirements are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four Rule 23(a) elements

---

[3] The undersigned acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

are known as numerosity, commonality, typicality, and adequacy of representation. *Id.*

### A. Numerosity

Numerosity means "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). A specific number to satisfy this rule is unspecified, but in general, more than forty people is sufficient. *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *1, *16 (11th Cir. Aug. 30, 2023) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, plaintiffs approximate the settlement class member total to be 1,375 people. Doc. 2 at 14; Klein Affirm ¶ 21. With this class size, individual joinder would be impractical. I find that the numerosity requirement is met.

### B. Commonality

To meet commonality, plaintiffs must show "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). A class action claim must rely on a common contention with "such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The aim is to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Specifically, when determining class certification, the Court must be able to infer that proposed class members endured a "common policy of discrimination that 'pervaded the challenged employment decisions.'" *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666 (M.D. Fla. 2000) (quoting *Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.C. Cir. 1994)).

10

Here, the operative complaint lists the following as the questions of law and fact common to the class: (a) whether defendants' policies or practices discriminate against black financial advisors; (b) whether defendants' policies and practices violate Title VII and Section 1981; and (c) whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the class are warranted. Doc. 7 ¶ 24. Therefore, all class members share the common issues of whether the defendants discriminated against black financial advisors in violation of Title VII and section 1981 through their policies and practices. *Id.* I find that the commonality requirement is met.

### C.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The class representatives need to have "the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009). Further, typicality assesses "whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* That nexus requires the claims or defenses of the class representatives and the class to emerge from the same practice or pattern, as well as to be founded on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, the named plaintiffs' and the remaining class members' contentions arise from their experiences as financial advisors for defendants. The named plaintiffs and remaining class members, who are black, allege as a result of defendants' patterns and

11

practices that they have been paid less and promoted less frequently than their white counterparts. Doc. 1 ¶¶ 2-7. Thus, the class representatives' claims are typical because they arise out of identical legal theories, specifically disparate impact discrimination and intentional discrimination under Title VII and section 1981. *Id.* at 8-9. Further, these claims all arise from defendants' practices regarding black financial advisors. *Id.* ¶¶ 2-7. The named members' claims differ only in regard to their work locations and periods of employment with defendants. *Id.* ¶¶ 12-17; *see also Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001). Thus, I find the typicality requirement is met.

### D. Adequacy of Representation

Regarding adequacy of representation, the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the Court must evaluate "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

Based on plaintiffs' motion for preliminary approval of class action settlement and supplemental filings, there do not appear to be substantial conflicts of interest between the class and the representatives. *See generally* doc. 2. The motion states the named plaintiffs and members of the class "are in the same job title and position." *Id.* at 16. In one of the supplemental filings, plaintiffs clarified that the named plaintiffs "held either one or both titles [of FA or FSA] and were subjected to the same

12

compensation policies they challenge as all other Class Members[,]" and that "[a]ll four [p]laintiffs participated in the FADP/PMD training program during their tenure with [d]efendants." Doc. 29 at 11. Moreover, plaintiffs state evidence does not exist suggesting opposing interests between the named representatives and the class members. Doc. 2 at 16. The undersigned is also confident the representatives will sufficiently prosecute this action.

Further, the undersigned finds plaintiffs' counsel to be "qualified, experienced, and generally able to conduct the proposed litigation[.]" *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985)). Plaintiffs' proposed class counsel submitted two affirmations describing their respective extensive experience working as counsel in class action lawsuits. Docs. 2-1, 2-5. Courts have found O&G to be qualified class counsel in seven class action lawsuits. Doc. 2-1 ¶ 4. Further, Shavitz provided a list of forty-five collective and class actions where it has been appointed as class counsel. Doc. 2-5 ¶ 10. The undersigned finds that adequacy of representation is met.

### E. Rule 23(b)

After satisfying the above, plaintiffs must then meet Rule 23(b) by fulfilling one of its three thresholds. Fed. R. Civ. P. 23(b). Under Rule 23(b)(3), a class action may be sustained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." *Id.* Thus, plaintiffs must meet both the predominance and superiority requirements to satisfy Rule 23(b)(3).

First, "[c]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Predominance is harder to satisfy than the commonality requirement. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (citations omitted). When evaluating predominance, the Court assesses the significance and the number of common issues, but there does not need to be "a complete absence of individual issues." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 655 (S.D. Fla. 2012).

In this instance, the common liability questions are whether defendants' practices and policies discriminated against black financial advisors in violation of Title VII and section 1981 and whether these procedures warrant relief and damages for the class members. Doc. 1 ¶ 24. a. Plaintiffs assert that "Merrill's job assignment, pay, and promotion policies discriminated against [black] Financial Advisors based on their race and/or color – predominates over any issues affecting only individual class members." Doc. 2 at 22. Additionally, plaintiffs allege that defendants' teaming policies and resource distribution practices violated the civil rights of black financial advisors and financial advisor trainees. Doc. 22 at 5.

Second, the superiority analysis focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to

the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). Here, it would be "repetitive, wasteful, and an extraordinary burden on the courts" to adjudicate plaintiffs' claims individually rather than as a class of approximately 1,375 people. *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. at 659. Although the Agreement does not provide an exact monetary amount each class member will receive, the undersigned believes this class action lawsuit is the most efficient and fair method of handling plaintiffs' claims. Based on the above representations, I find that the predominance and superiority requirements of Rule 23(b)(3) are satisfied here. *See McReynolds v Merrill Lynch*, No. 05 Civ. 6583, 2012 U.S. Dist. LEXIS 190413, at *2 (N.D. Ill. July 13, 2012) (approving race discrimination class-action settlement on behalf of black financial advisors); *Calibuso v Bank of America*, 299 F.R.D. 359, 361-62 (E.D.N.Y. 2014) (approving gender discrimination class action settlement on behalf of female financial advisors).

### III.    Unopposed Motion to Preliminarily Approve Settlement

After evaluating class certification, the Court may then consider the settlement. To preliminarily approve the Agreement, the Court must evaluate whether the settlement qualifies as within the "range of reasonableness." *In re Takata Airbag Prods. Liab. Litig.*, No. 14-cv-24009-MORENO, 2018 WL 11422997, at *4 (S.D. Fla. Sept. 5, 2018). Specifically, "preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies[,] and the settlement falls within the range of reason." *Id.* (quoting *Smith*

*v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010)). Below, the undersigned evaluates the fairness of the Agreement, the sufficiency of the proposed notice, and appointing O&G and Shavitz as class counsel.

### A. Fairness of the Agreement

When evaluating whether the Agreement is equitable, Rule 23(e)(2) sets out four considerations for determining if a proposal is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). These four considerations are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id.*; *see Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023).

These four considerations stem from a 2018 amendment to Rule 23(e)(2). *Ponzio*, 87 F.4th at 494. But there are also six preexisting factors for the Court's consideration that complement the core considerations. *Id.* The factors, often termed the *Bennett* factors, are: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Blessinger v. Wells Fargo & Co.*, No. 8:22-cv-1029-TPB-SPF, 2023 WL 8458253, at *8 (M.D. Fla. Oct. 20, 2023) ("With Rule 23 satisfied as to preliminary class certification, the Court segues into determining preliminarily if the

16

Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors."), *report and recommendation adopted*, 2023 WL 8432223 (M.D. Fla. Dec. 5, 2023). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient[,]" so long as the settlement is based on good faith negotiations and is "within the range of reason." *Iverson v. Advanced Disposal Servs., Inc.*, No. 3:18-cv-867-BJD-JBT, 2021 WL 4943585, at *5 (M.D. Fla. Aug. 6, 2021).

Here, "regarding the first two Rule 23(e)(2) factors and the analogous *Bennett* criteria," *Blessinger*, 2023 WL 8458253 at *8, the parties came to this Agreement after over three years of arm's length negotiations. Doc. 2 at 5. In November 2020, the parties executed a tolling agreement and began providing preparatory information regarding claims, defenses, and damages. *Id.* at 6. Specifically, plaintiffs' counsel assessed defendants' compensation and human resources data to determine the difference in pay between black and white financial advisors and obtained documents from defendants pertaining to these policies. *Id.* at 3, 6. Plaintiffs' counsel performed research on improving defendants' work environment, as well as different job titles, responsibilities, and guidelines. *Id.* at 6. Further, "plaintiffs' counsel conducted in-depth interviews with [p]laintiffs and other Merrill current and former employees to determine their compensation, their job responsibilities, their backgrounds and contributions, and other information relevant to their claims." *Id.* at 3.

After evaluating the risks, merits, and possible damages for the class claims, the parties mediated the action with an experienced mediator, David Rotman. *Id.*; *see also Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-cv-2246-T-23TGW, 2006

WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). Ultimately, the parties "attended good faith, arms-length mediations" several times until reaching a finalized settlement on December 28, 2022, which was revised on May 24, 2024. Doc. 2 at 7; *see also Woznicki v. Raydon Corp.*, No. 6:18-cv-2090-WWB-GJK, 2021 WL 7502541, at *5 (M.D. Fla. Aug. 25, 2021) ("The previous dealings between the parties and attorneys, including mediating with a retired magistrate judge, support the conclusion that the Agreement was negotiated at arm's length."), *report and recommendation adopted*, 2021 WL 7502549 (M.D. Fla. Oct. 26, 2021). I therefore find the settlement is based on good faith negotiations and that the class representatives and class counsel have adequately represented the class.

"Next is Rule 23(e)(2)(C) and the related *Bennett* consideration regarding the adequacy of relief awarded to the class." *Blessinger*, 2023 WL 8458253, at *8. In evaluating these factors, the Court is required to "consider: (1) the costs, risk, and delay of trial and appeal; (2) the effectiveness of the proposed method of distributing relief to the class, including the method proposed for processing claims; (3) the terms of any proposed award of attorney's fees including the timing of such payment; and (4) the parties' settlement." *Id.* (citing Fed. R. Civ. P. 23(e)(2)(C)). As an initial matter, under the Agreement the parties intend to use "a third-party administrator to facilitate notifying and distributing settlement checks to Settlement Class Members." *Id.* at *9 (internal citation omitted); *see also* Doc. 2-2 at ¶ 5.1(C)(E). In addition, "neither the

Settlement nor the amount depends on the Court approving the attorneys' fees award." *Blessinger*, 2023 WL 8458253, at *9 (internal citation omitted); *see also* Doc. 2-2 at ¶ 9.2.

Moreover, as this case is in its motion-practice infancy, "the Settlement will eliminate the need for what likely would be a protracted and costly litigation including further class certification proceedings, summary judgment motions, and trial." *Blessinger*, 2023 WL 8458253, at *9. Finally, as to the parties' settlement, the Agreement describes a gross settlement amount of $19,950,000. Doc. 2-2 at 8. The class members' monetary awards "will be calculated by the Settlement Administrator based on an assignment of points to each Settlement Class Member according to the Settlement Class Member's length of tenure . . . between November 23, 2016, and the date of the Preliminary Approval Order." *Id.* § 4.3(B). The net fund will be allocated as fifty percent to those who were employed as financial advisors and fifty percent to those who were employed as in the other relevant categories. *Id.* This procedure and amount is not obviously deficient to the undersigned. Thus, I also find the Agreement is within the range of reason and the relief provided for the class is adequate.

"Last up is Rule 23(e)(2)(D) and the remaining *Bennett* factors." *Blessinger*, 2023 WL 8458253, at *9. Here, the Class Release provision operates equitably in that it applies to "any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences, or nucleus of operative facts that form the basis of the class claims asserted in [the] Complaint[.]" Doc. 2-2 at ¶ 6.1(A); *see also Blessinger*, 2023 WL 8458253, at *9. Moreover, the Agreement "treats Settlement Class Members equitably

19

relative to one another via the Plan of Allocation" in that each Settlement Class Member will receive a check based on the Settlement Class Member's length of tenure between November 23, 2016, and the date of the Preliminary Approval Order. *Blessinger*, 2023 WL 8458253, at \*9; *see also* Doc. 2-2 at ¶ 4.3(B).

The undersigned also notes that within their motion for preliminary approval of class action settlement, the named plaintiffs stated that they "have agreed to resolve their individual, non-class claims for separate consideration, and have agreed to provide a broader general release of claims for matters that are outside the scope of this Settlement." Doc. 2 at 7. Thereafter, the parties provided a separate submission under seal identifying the terms of the resolution of the named plaintiffs' individual claims. Doc. 2 at 7 n.3; Doc. 28-2; Doc. 28-3; Doc. 28-4; and Doc. 28-5. Upon review of the filings, as well as caselaw within the Eleventh Circuit, the undersigned highlights that "the parties are not seeking approval of this separate agreement, [rather] they are purporting to simply inform the Court of its existence." *Huff v. Bobcat North America, LLC*, No. 6:19-cv-861-Orl-37DCI, 2021 WL 268356, at \*4 (M.D. Fla. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 268355 (M.D. Fla. Jan. 27, 2021). Thus, the undersigned agrees with the *Huff* court and "recommends that the Court not pass on the validity of the separate release, but instead find that it does not affect the fairness of the [] settlement in this action as set forth in the Agreement." *Id.*[4]; *cf. Thomas v. JSTC,*

---

[4] Despite the recommendation, the undersigned does share similar concerns that were raised by the *Huff* court. *Id.* at \*4 ("[I]t is somewhat troubling that this release could be interpreted as a de facto service payment to a named plaintiff—a payment that would be

*LLC*, No. 6:19-cv-1528-RBD-GJK, 2022 WL 2200387, at *2 n.7 (M.D. Fla. Apr. 28, 2022) ("The parties contend the Court has agreed to similar general releases, specifically, in *Huff* …. But in *Huff*, the Court did not pass on the fairness of the separate [] payment as it was not before the Court for approval …. The decision in *Huff* is inapposite to the issues here."); *Lochren v. Horne LLP*, No. 6:21-cv-1640-WWB-LHP, 2023 WL 7411114, at *8 (M.D. Fla. Sept. 19, 2023) ("Given that here the service award provision is subject to Court approval … the undersigned will recommend that the Court decline to approve it[.]"), *report and recommendation adopted*, 2023 WL 9792603 (M.D. Fla. Nov. 20, 2023).

In sum, all of the Rule 23(e)(2) factors and five of the six *Bennett* factors[5] weigh in favor of preliminarily approving the Agreement. Thus, I recommend the Agreement be approved preliminarily.

## B.  *The Proposed Notice*

According to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). The notice may be sent by United States mail and must be "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B). In plain

---

unsupported on this record and perhaps improper. Again [and despite this], the undersigned makes no findings as to the validity of the release.").

[5] "Because the Settlement Administrator has not yet notified Settlement Class Members, the Court cannot evaluate the fifth *Bennett* factor regarding the amount of opposition to the Settlement." *Blessinger*, 2023 WL 8458253, at *9 n.7.

language, the notice must state the action's nature; the definition of the certified class; the issues, claims, or defenses of the class; that a class member can enter an appearance through an attorney; that any member may request to be excluded; the way to request the exclusion; and the class judgment's binding effect on the class members according to Rule 23(c)(3). *Id.*

Plaintiffs' proposed notice meets these criteria. All class members will be sent the notice through first-class United States mail. Doc. 2 at 11. Further, counsel indicated it would create a website and an email account for class members. *Id.* Defendants will provide to the settlement administrator each class member's "name[], social security number, last known address, last known telephone number, dates of employment in the covered position, and job title[.]" Doc. 2-2 § 5.1(A). Moreover, the proposed notice contains all other required information under Rule 23(c)(3), informs members on how to contact class counsel or the settlement administrator, and provides detailed explanations about the class members' legal rights to participate, opt out, or object to the settlement. Doc 2-3 at 2, 3; *see also Holmes v. WCA Management Company, L.P.*, No. 6:20-cv-698-PGB-LRH, 2021 WL 7627742, at *10 (M.D. Fla. May 3, 2021), *report and recommendation adopted*, 2021 WL 7627744 (M.D. Fla. May 12, 2021). I recommend that the notice be approved.

## C.  *Appointing Class Counsel*

According to Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When considering class counsel, the Court must address the following four factors: "(i) the work counsel has done in identifying or

investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). Further, the Court is permitted to consider anything related to "counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Here, and as noted above, *see supra* II.D., O&G is an employment and civil rights firm that has been involved in numerous class action cases and settlements. Doc. 2-1 ¶ 4. Shavitz is a law firm that represents plaintiffs in employment actions and has extensive experience serving as class counsel. Doc. 2-5 ¶¶ 1, 10; *Blessinger*, 2023 WL 8458253, at *9 (Recommending appointment of proposed class counsel and noting that "[e]ach attorney submit[ted] a declaration attesting to his significant experience litigation labor and employment law cases, in particular serving as class counsel in COBRA cases"). From the action's outset, the firms have been involved in developing the case, investigating its merits, conducting interviews with plaintiffs, obtaining supporting documentation, and mediating with defendants to reach the proposed Agreement. Doc. 2-1 ¶¶ 13-18; *see also Blessinger*, 2023 WL 8458253, at *9 ("The attorneys have litigated this case from inception through settlement and everything between. [The attorneys] are well suited to serve as Class Counsel."). I recommend, therefore, that O&G and Shavitz be appointed as class counsel.

IV.    Attorneys' Fees and Reimbursement of Costs

In addition to seeking approval of the settlement, plaintiffs also separately move for approval of attorneys' fees in an amount equal to one-third of the gross settlement amount ($6,583,500.00) and out-of-pocket litigation costs to be paid from the gross settlement amount ($92,280.18), plus an additional amount to be determined for class administration. Doc. 10 at 2; doc 10-1 ¶ 39 (O&G's costs equal to $83,671.14); doc. 10-4 ¶ 25 (Shavitz's costs equal to $8,609.04); doc. 10-3.

When a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condominium Assn.*, 946 F.2d at 771. "[T]he percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* at 774.

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* However, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund[,]" although "an upper limit of 50% of the fund may be stated as a general rule[.]" *Id.* at 774-75. In the Eleventh

24

Circuit, the factors for evaluating the reasonable percentage to award class-action counsel are as follows:

1) the time and labor required;
2) the novelty and difficulty of the questions involved;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) the customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation, and ability of the attorneys;
10) the "undesirability" of the case;
11) the nature and the length of the professional relationship with the client;
12) awards in similar cases.

*Id.* at 772 n.3.

Here, upon consideration of the filings, the undersigned finds that it is premature to rule on plaintiffs' motion for attorneys' fees and costs because the unnamed class members have not had an opportunity to receive notice of the motion for attorneys' fees and costs and issue any objections if deemed necessary. *See Drazen v. GoDaddy.com, LLC*, No. 1:19-cv-00563-KD-B, 2020 WL 8254868, at *3 (S.D. Ala. Dec. 23, 2020) ("[T]he Court acknowledges its order granting in part and denying in part Plaintiffs' request for attorneys' fees was premature, as it preceded the objection deadline[.]"), *vacated and remanded on other grounds*, 41 F.4th 1354 (11th Cir. 2022); *see also In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-95 (9th Cir. 2010) ("Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. When the district court sets

a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class."). Indeed, "[w]hen [$19.95] million is at stake, and the interests of class counsel are in conflict with the interests of the class, it is the obligation of the district court to ensure that the class has an adequate opportunity to review and object to its counsel's fee motion[.]" *In re Mercury Interactive Corp.*, 618 F.3d at 995.

"While the Undersigned is cognizant of the significant time and effort the parties put into the issue of attorneys' fees … the Undersigned cannot recommend an award of attorneys' fees at this time" and instead recommends that the motion for attorneys' fees and costs **be denied without prejudice** as premature. *O'Connor v. Worthington PJ, Inc.*, No. 2:16-cv-608-FtM-99MRM, 2017 WL 6762436, at *8 (M.D. Fla. Dec. 13, 2017), *report and recommendation adopted*, 2018 WL 264382 (M.D. Fla. Jan. 2, 2018). The undersigned further recommends that plaintiffs be permitted to file a renewed motion for attorneys' fees and costs at a date subsequent to notice being issued to class members and prior to an objection deadline, as detailed below.

V.    <u>Summary of Proposed Key Dates</u>

The undersigned proposes the following schedule for events remaining:

| Event | Date |
| --- | --- |
| Class data to be provided to the Settlement Administrator | 30 days after Order entered approving preliminary approval of class action settlement |
| Class Notice to be sent by | 30 days after class data received by the Settlement Administrator |

26

| Class Counsel to file their motion for fees and costs | 45 days after date of Class Notice being sent out |
| Motion for Final Approval to be filed by | 45 days after date of Class Notice being sent out |
| Deadline to submit objection or request for exclusion | 35 days after deadline for filing (i) motion for fees and costs; and (ii) motion for final approval |
| Fairness and Final Approval Hearing | Set by the Court in a separate order |

## Recommendation

For the reasons set forth above, the undersigned respectfully **recommends** that the Court:

1. **Certify** the **proposed settlement class** for settlement purposes only, doc. 2;

2. **approve** the **Agreement** preliminarily, doc. 2;

3. **permit** the proposed **Agreement and Notice**, doc. 2;

4. **appoint** O&G and Shavitz as **class counsel**, doc. 2;

5. **deny** the entry of the **proposed Preliminary Approval Order**, doc. 2;[6]

6. **deny without prejudice** the requested **motion for attorneys' fees and costs**, doc. 10; and

7. set dates for the remaining key events as detailed within the "Summary of Proposed Key Dates" section of this Report and Recommendation.

---

[6] According to the Middle District of Florida Local Rules, a party may not "submit a proposed judgment or other order without leave." Local Rule 3.01(j) of the United States District Court for the Middle District of Florida.

**Entered** in Jacksonville, Florida, on February 7, 2025.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

### Notice to the Parties

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (doc. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
The Honorable Wendy Berger, United States District Judge
Adam T. Klein, Esquire
Chauniqua D. Young, Esquire
Courtney J. Hinkle, Esquire
Paolo C. Meireles, Esquire
Gregg I. Shavitz, Esquire
Samuel Scott Shaulson, Esquire
Joseph Magrisso, Esquire
Michael S. Burkhardt, Esquire