# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| LUCINDA COUNCIL, RAVYNNE GILMORE, VERNA MAITLAND, and HILARI NGUFOR, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　- against -<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED and BANK OF AMERICA CORPORATION,<br><br>　　　　　　Defendants. | Case No. 3:24-CV-00534-WWB-LLL |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................2

    A.    The Litigation.......................................................................................2

    B.    Notice to Settlement Class Members....................................................2

    C.    Class Members' Reaction to the Settlement..........................................4

III.  TERMS OF PROPOSED SETTLEMENT ......................................................5

    A.    The Settlement Class ............................................................................5

    B.    Relief Terms of the Settlement Agreement ..........................................5

    C.    Release of Claims ................................................................................6

IV.   ARGUMENT ...................................................................................................6

    A.    Final Certification of the Rule 23 Classes is Proper. ...........................6

    B.    The Settlement Meets the Requirements for Final Approval.................7

        1.    The Bennett Factors Support Final Approval of the Settlement. .8

            a.    Likelihood of Success and Litigation Complexity Favors Settlement. ......................................................................8

            b.    The Settlement is Within the Range of Possible Recoveries....................................................................9

            c.    The Extent of Discovery Supports Final Approval. ........11

            d.    Class Members Reacted Positively to the Settlement. .....12

        2.    The Settlement is Not a Product of Collusion Between Parties. 13

        3.    Counsel's Experience and Views Support Approval. ................14

    C.    The Best Practicable Notice Has Been Provided to the Class. .............14

V.  CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ....................................................................10

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...........................................................7, 8, 12, 13

*Blessinger v. Wells Fargo & Co.*,
   No. 22 Civ. 1029, 2022 U.S. Dist. LEXIS 143073 (M.D. Fla. Aug. 12,
   2022) ...........................................................................................................8, 13

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   No. 04 Civ. 3066, 2012 U.S. Dist. LEXIS 196031 (N.D. Ga. Oct. 26,
   2012) ...............................................................................................................12

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...........................................................7, 9, 10, 14

*In re Equifax Customer Data Sec. Breach Litig.*,
   2800, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) .....................11

*Estate of Dolby v. Butler & Hosch, P.A.*,
   No. 3 Civ. 2246, 2006 U.S. Dist. LEXIS 102738 (M.D. Fla. Aug. 4,
   2006) ...............................................................................................................11

*In re Home Depot, Inc., Customer Data Security Breach Litig.*,
   2583, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) .....................12

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ................................................................ 13, 14

*Junior v. Infinity Ins. Co.*,
   No. 18 Civ. 1598, 2021 U.S. Dist. LEXIS 82860 (M.D. Fla.
   Apr. 29, 2021) ...............................................................................12-13, 13, 14

*Lipuma v. Am. Express*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................9, 10, 11, 12

*In re Motorsports Merch. Antitrust Litig.*,
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) ...........................................................9

*Nelson v. Mead Johnson & Johnson Co.*,
  484 F. App'x 429 (11th Cir. 2012)........................................................ 8, 13, 14

*Tornes v. Bank of Am., NA  (In re Checking Acct. Overdraft Litig.)*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................................11

*In re U.S. Oil and Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ......................................................................7

*Warren v. City of Tampa*,
  693 F. Supp. 1051 (M.D. Fla. 1988) .............................................................14

*Woznicki v. Radon Corp.*,
  No. 18 Civ. 2090, 2021 U.S. Dist. LEXIS 161400 (M.D. Fla. Aug. 25,
  2021) .......................................................................................................11

## FEDERAL RULES

Fed. R. Civ. P. 23 ..................................................................... 7, 14, 15

Plaintiffs Lucinda Council, Ravynne Gilmore, Verna Maitland, and Hilari Ngufor ("Plaintiffs") respectfully move for final approval of the $19,950,000.00 Settlement[1] with Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. and Bank of America Corp. ("Defendants" or "Merrill") on behalf of a class of current and former African-American employees who worked for Merrill as Financial Advisors in the United States.  The response to the Settlement has been overwhelmingly positive.  At the time of this filing, no Settlement Class Member has objected and only two Class Members have requested to opt out of the Settlement.  *See* Declaration of Jennifer Smith for Rust Consulting, Inc. ("Smith Decl.") ¶¶ 16-17.  The Court preliminarily concluded months ago that the Settlement is fair, reasonable, and adequate, and it is now clear that the Court can readily confirm that finding.  ECF No. 32, at 21; ECF No. 34.

This motion is made based on the accompanying Memorandum of Points and Authorities, Settlement Agreement, Declaration of Adam T. Klein and accompanying exhibits, and all other papers, pleadings, documents, arguments, materials, and any other evidence the Court may consider.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Declaration of Adam T. Klein ("Klein Decl.") and all capitalized terms used herein have the same meaning as set forth in the Settlement Agreement.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

Plaintiffs Lucinda Council, Ravynne Gilmore, Verna Maitland, and Hilari Ngufor ("Plaintiffs"), on behalf of themselves and the Settlement Class, seek final approval of their settlement with Defendants.

The proposed settlement includes significant programmatic changes, which benefit both Settlement Class Members and future Financial Advisors, and requires Merrill to pay Nineteen Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00), which will cover individual settlement payments to eligible Settlement Class Members, the costs of settlement administration, and attorneys' fees and costs.

The response to the Settlement has been overwhelmingly positive.  At the time of this filing, no Settlement Class Member has objected and only two Class Members have requested to opt out of the Settlement.  *See* Smith Decl. ¶¶ 16-17.  The Court preliminarily concluded months ago that the Settlement is fair, reasonable, and adequate, and it is now clear that the Court can readily confirm that finding.  ECF Nos. 32, 34.

Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement as fair, reasonable and adequate pursuant to Rule 23(e); (2) incorporating the terms of the release; and (3) dismissing the matter with prejudice pursuant to the terms of the Settlement Agreement.

## II.    FACTUAL BACKGROUND

### A.    The Litigation

An in-depth factual background of the litigation and settlement negotiations is set forth in Plaintiffs' Motion for Preliminary Approval (ECF. No 2) and Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 10).  In brief, this Settlement was reached after years of hard-fought, arm's length negotiations between experienced counsel with the assistance of an experienced third-party mediator and a robust exchange of documents and data.

### B.    Notice to Settlement Class Members.

On May 24, 2024, Plaintiffs moved for Preliminary Approval of the Settlement. ECF No. 2.  On February 27, 2025, the Court granted preliminary approval and approved dissemination of the proposed Notice.  ECF No. 34; *see* Smith Decl., Ex. A (Notice) §§ 4, 9.  The Notice explained the monetary and programmatic relief, the allocation of attorneys' fees and costs, and provided specific information regarding how Settlement Class Members could object or exclude themselves from the Settlement.  Smith Decl., Ex. A (Notice) § 5.

On or about April 10, 2025, Merrill provided the Settlement Administrator, Rust Consulting, Inc. ("Rust"), with a list containing Settlement Class Members' names, last known addresses, Social Security Numbers, and applicable employment information.  Smith Decl. ¶ 9.  The Class List contained data for 1,346 Settlement Class Members.  *Id.*  Rust processed and updated the mailing addresses in the Class List utilizing the National Change of Address Database ("NCOA") maintained by the

U.S. Postal Service. *Id.* ¶ 10. Rust maintained a dedicated case website listing telephone and email contact information for the Settlement Administrator and Class Counsel. Id. ¶ 7; *id.* Ex A (Notice) § 12. On May 22, 2025, Rust mailed the Notice to each Settlement Class Member's last known residential address. Smith Decl. ¶ 11. Rust ran the list of Settlement Class Members through the United States Postal Service's National Change of Address ("NCOA") database before mailing the Notice. *Id.* ¶ 10.

If Notices were returned to Rust by the U.S. Postal Service with forwarding addresses, Rust promptly re-mailed the Notice to the new address. *Id.* ¶ 12. For any Notices that were returned without a forwarding address, Rust performed a standard skip trace to ascertain the Settlement Class Member's current address. *Id.* If an address was ascertained, Rust promptly re-mailed the Notice. *Id.* In total, all but 19 Notices were successfully delivered through this process. *Id.* This means at minimum the Notice reached 98% of Settlement Class Members. *Id.* Settlement Class Members have until August 11, 2025 to object to or opt out of the Settlement, or 45 days from the date of any remailing if requested after June 27, 2025.[2]

---

[2]    In granting Plaintiffs' Motion for Preliminary Approval, the Court ordered that Class Members have 80 days from the date of mailing to submit an opt-out request or objection. ECF Nos. 33 at 27 (ordering objection and exclusion deadline to be 35 days after the filing of Plaintiffs' motion for fees and costs and final approval, which is due 45 days after Notice was sent to the Class). Pursuant to the Settlement Agreement, Class Members have 45 days from the date of any remailing to submit an opt-out request or objection. ECF No. 2-2 (Settlement Agreement) § 5.1(C). Plaintiffs will file a supplemental statement with the Court advising the Court of any additional opt-ins or objections that are received after the filing of this Motion, within seven (7) days of the Final Approval Hearing.

Should the Court grant Plaintiffs' Motion for Final Approval, within 30 days of the Effective Date, Merrill will transfer the Gross Settlement Amount to a Qualified Settlement Fund (QSF).  ECF No. 2-2 (Settlement Agreement) § 4.1(B).[3]  Within 10 days of receiving the funds, Rust will distribute checks to all Settlement Class Members.  Id. § 5.1(E).  Each Settlement Class Member will have 90 days to deposit or cash their check.  Id. § 5.1(F).  Rust will mail a reminder postcard halfway through the check expiration date.  Id. § 5.1(G).  If there is a remaining balance in the Net Settlement Fund after the 90-day check-cashing period, the remaining balance of funds will be paid to the Cy Pres Designee within 30 days, which is the Association of African American Financial Advisors or another third-party organization to be mutually agreed upon by the Parties.  Id. §§ 5.1(H), 2.9.

### C.    Class Members' Reaction to the Settlement.

Over the past month, Class Counsel have received communications from numerous Class Members who work or worked for Merrill.  Klein Decl. ¶ 2.  In addition, Class Counsel received several inquiries after Plaintiffs filed their motion for preliminary settlement approval (due to press coverage of the proposed Settlement) but before the Settlement Administrator sent Notice to the Class.  *Id.*  Class Members were generally supportive of the settlement and interested in participating.  *Id.* ¶ 3.  As of the date of this filing, no Settlement Class Member objected to the Settlement, and

---

[3]    Given the length of time from when Plaintiffs first moved for preliminary certification in December 2022, Class Counsel respectfully seeks an order as soon as possible to not further delay payment to the Class.

only two Settlement Class Members chose to opt out of the Settlement.  Smith Decl.

¶¶ 16-17.  No Class Member has requested to appear at the Fairness Hearing.  *Id.* ¶ 18.

## III.   TERMS OF PROPOSED SETTLEMENT

### A.    The Settlement Class

"Settlement Class Members" means the class that the Parties jointly seek to

have certified, solely for the purposes of the Settlement Agreement, which is defined

as:

> [A]ll African-American employees and former employees who held the position(s) at the Company of Financial Advisor ("FA"), Financial Advisor Development Program Trainee ("FADP") (formerly known as Practice Management Development Trainee ("PMD")), and Financial Solutions Advisor ("FSA") at any time during the Class Period.  "Settlement Class Members" do not include any FAs, FADPs, PMDs, or FSAs who (i) did not pass the licensing exams required for the respective position; (ii) have executed a release of claims on or before the deadline for the Settlement Administrator to mail Notice to the Settlement Class releasing any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims; or (iii) have obtained a final judgment or determination concerning any claims that would or could have been alleged in the Action, including race and/or color discrimination, harassment, or retaliation claims.

ECF No. 2-2 (Settlement Agreement) §§ 2.31, 4.2.

### B.    Relief Terms of the Settlement Agreement

The Settlement requires Merrill to pay a Gross Settlement Amount of Nineteen

Million Nine Hundred Fifty Thousand Dollars and Zero Cents ($19,950,000.00).  ECF

No. 2-2 (Settlement Agreement) § 4.1.  The Gross Settlement Fund will cover: (1)

Settlement Class Member payments; (2) settlement administration costs; (3) Court-

approved attorneys' fees and expenses; and (4) applicable tax withholdings.  Id.  The

plan of allocation fairly and adequately compensates every eligible Settlement Class Member. *Id.* § 4.3. The Parties have agreed that the payment amount will be calculated based on an assignment of points for each workweek worked during the Class Period in a relevant job title. ECF No. 2-2 (Settlement Agreement) § 4.3.

In addition to monetary relief, Merrill agrees to significant programmatic relief measures, which are in place for a period of five years (60 months) from the date of the Final Approval Order. *Id.* § 4.5. These future-looking commitments are meant to reinforce Merrill's commitment to equal employment opportunity for all employees, irrespective of race and color. *Id.*

### C.    Release of Claims

In exchange for this relief, the Settlement Class will release Merrill from the following claims ("Released Claims"):

> any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences, or nucleus of operative facts that form the basis of the class claims asserted in Complaint, including, but not limited to, claims for race and/or color discrimination under Title VII, Section 1981, LAD, ELCRA, NYSHRL, FCRA, or any other federal, state, local, or common law statute, regulation, or principle of common law or equity that may apply to such discrimination in employment or employee benefit claims.

*Id.* § 6.1(A).

## IV.    ARGUMENT

### A.    Final Certification of the Rule 23 Classes is Proper.

In its Preliminary Approval Order, the Court conditionally certified the Class for purposes of settlement; appointed Plaintiffs Lucinda Council, Ravynne Gilmore,

Verna Maitland, and Hilari Ngufor as Class Representatives; and appointed Plaintiffs' counsel, Outten & Golden LLP and Shavitz Law Group, as Class Counsel.  ECF No. 34, at 2.  Since that time, nothing has changed to alter the Court's ruling. The Class definitions remain the same. For these reasons, final certification of the Settlement Class is appropriate.

### B.    The Settlement Meets the Requirements for Final Approval.

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  "Particularly in class action suits, there is an overriding public interest in favor of settlement."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  A court may approve a class action settlement pursuant to Rule 23(e) "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Pursuant to Rule 23(e)(2), a court must consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.   Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).   The Eleventh Circuit has further identified the following factors that courts should consider in determining whether a settlement is fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

In making that determination, the court may rely on "the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012); *see also Blessinger v. Wells Fargo & Co.*, No. 22 Civ. 1029, 2024 U.S. Dist. LEXIS 143073, at *22 (M.D. Fla. Aug. 12, 2022) ("Courts also 'give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks.'" (quoting *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 14 Civ. 1182, 2015 U.S. Dist. LEXIS 81518, at *1 (M.D. Fla. June 17, 2015)).  In addition, the court must find the class action settlement "is not a product of collusion between the parties." *Bennett*, 737 F.2d at 986.

Approval is appropriate here because the Settlement was reached through vigorous, hard-fought, arm's-length negotiation between lawyers with significant experience, and with the help of an experienced mediator.

### 1. The Bennett Factors Support Final Approval of the Settlement.

#### a. Likelihood of Success and Litigation Complexity Favors Settlement.

As to factors (1), (2), and (4) – Plaintiffs' likelihood of success at trial, the range of possible recovery, and the complexity, expense and duration of litigation – if the case were to be litigated, the litigation would likely be complex and expensive.  While Plaintiffs and Class Counsel maintain that the claims alleged in the Complaint are meritorious and strong, Class Counsel also recognizes that there are significant risks inherent in litigation and that success at trial is uncertain for either side.  Plaintiffs strongly believe that their claims have merit, and are suitable for class treatment.

However, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims. Plaintiffs further recognize the possibility that the lawsuit, if not settled now, might not result in any recovery or might result in a less favorable recovery to the putative class.

Even if Plaintiffs were successful, Merrill would likely seek interlocutory review of class certification rulings via Rule 23(f) in the Court of Appeals, delaying the progress towards trial. The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial. Protracted litigation carries inherent risks that would necessarily delay and endanger the class members' monetary recovery. Even if Plaintiffs prevailed at trial against Merrill, recovery could be delayed for years by an appeal. *See Lipuma v. Am. Express*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (holding likelihood that appellate proceedings could delay recovery "strongly favor[s]" approval of a settlement).

> **b.    The Settlement is Within the Range of Possible Recoveries.**

As to factor (3), the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable, when evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330; *see also In re Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329, 1334 (N.D. Ga. 2000) ("The Court must look to the range of possible damages that Plaintiffs

could recover at trial and then combine this assessment with the likelihood of Plaintiffs' success at trial to determine whether the settlement falls within the range of recoveries that is fair."). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Moreover, courts have determined that settlements may be reasonable even where class plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Here, notwithstanding the obstacles outlined above, the overall settlement commits Merrill to pay a gross amount of $19,950,000.00 to compensate the class and to undertake significant programmatic changes with a commitment period of five years – a substantial result that will provide meaningful benefit to the putative class as well as current and future Merrill employees. The benefits are all the more significant given the strengths and weaknesses of the case, where failure at trial was certainly possible. Moreover, there was no fraud or collusion in the settlement. To the contrary, the Parties reached a settlement after more than three years of extensive, arm's-length negotiations between counsel with many decades of employment discrimination class experience, and with the assistance of an experienced and well-respected mediator.

### c.    The Extent of Discovery Supports Final Approval.

As to factor (6), the stage of proceedings at which the settlement was achieved, courts look to whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Id.* at 1324; *accord In re Equifax Customer Data Sec. Breach Litig.*, No. 17 Md 2800, 2020 U.S. Dist. LEXIS 118209, at *176-77 (N.D. Ga. Mar. 17, 2020) (courts examine whether "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation"); *see also Tornes v. Bank of Am., NA  (In re Checking Acct. Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (approving class settlement where class counsel "developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation") (internal quotation and citation omitted).

Where the parties are "well informed of the merits of the case through discovery, the exchange of mediation statements and hours of intensive negotiations conducted through the mediator," "the Agreement is fair, reasonable, and adequate." *Woznicki v. Radon Corp.*, No. 18 Civ. 2090, 2021 U.S. Dist. LEXIS 161400, at *19 (M.D. Fla. Aug. 25, 2021) (internal quotation, citation, and alteration omitted) (finding sixth Bennett factor satisfied); *see also Estate of Dolby v. Butler & Hosch*, P.A., No. 3 Civ. 2246, 2006 U.S. Dist. LEXIS 102738, at *16 (M.D. Fla. Aug. 4, 2006) ("The proposed settlement is occurring early enough in the litigation that significant

11

litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.").

Here, the Parties engaged in significant informal discovery relating to liability and class-wide damages, which allowed Plaintiffs and Class Counsel to fully assess the strengths and weaknesses of the claims.  ECF No. 2, Klein Decl. ¶¶ 13-17.  Class Counsel believe that this Settlement achieves the objectives of any potential litigation: monetary payments to current and former African-American Financial Advisors and meaningful programmatic relief over a five-year period that addresses the heart of Plaintiffs' claims.

### d.    Class Members Reacted Positively to the Settlement.

Finally, the positive reaction of Class Members provides strong support for final approval of the Settlement.  The Court must consider "the substance and amount of opposition to the settlement."  *Bennett*, 737 F.2d at 986.  "[A] low percentage of objections demonstrates the reasonableness of the Settlement and supports the Settlement's approval."  *In re Home Depot, Inc., Customer Data Security Breach Litig.*, No. 14 Md 2583, 2016 U.S. Dist. LEXIS 200113, at *42 (N.D. Ga. Aug. 23, 2016); *see also Lipuma*, 406 F. Supp. 2d at 1324 (recognizing the "reaction of the class is an important factor" in determining whether a proposed settlement is fair, reasonable, and adequate).  Here, the fact that not one class member has objected to the settlement "weighs heavily in favor of settlement approval."  *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04 Civ. 3066, 2012 U.S. Dist. LEXIS 196031, at *11-12 (N.D. Ga. Oct. 26, 2012); *Junior v. Infinity Ins. Co.*, No. 18 Civ. 1598,  2021 U.S. Dist. LEXIS

82860, at *8 (M.D. Fla. Apr. 29, 2021) (Berger, J.) (holding absence of any objections favored final approval of settlement).

### 2.    The Settlement is Not a Product of Collusion Between Parties.

In addition to the Bennett factors, a court in granting final approval of a class action settlement must find that the settlement "is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986; *see also Blessinger*, 2024 U.S. Dist. LEXIS 143073, at *23-24. Here, the Settlement is not a product of collusion between the Parties but instead the result of hard-fought, arms-length negotiations extending over a period of over three years. The parties participated in three full-day mediations on May 25, 2021, July 27, 2021, and September 28, 2021, with experienced class-action mediator David Rotman. ECF No. 2, at 11-12. Settlement discussions were extensive and protracted. After more than three years, the parties finally executed a settlement agreement on December 28, 2022, which was further modified on May 24, 2024. Id. at 12. The Settlement requires Defendants to pay a substantial sum. *Nelson*, 484 F. App'x at 435 (finding no collusion where the settlement is "the result of extensive arms-length negotiations"); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties"); *Junior*, 2021 U.S. Dist. LEXIS 82860, at *9 (Berger, J.) (holding extensive negotiations overseen by experienced mediator demonstrated absence of collusion).

### 3.    Counsel's Experience and Views Support Approval.

Finally, in approving a settlement, the Court may also consider the views of Counsel. *Nelson*, 484 F. App'x at 434 (court may rely on "the judgment of experienced counsel for the parties" in determining whether the settlement is fair, reasonable, and adequate); Where experienced counsel represents the settlement class, the court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *Junior*, 2021 U.S. Dist. LEXIS 82860, at *9 (Berger, J.) (holding the view of experienced class action litigators favored final approval of settlement); *Ingram*, 200 F.R.D. at 691 (considering experienced class counsel's "collective judgment that the benefits of th[e] settlement far outweigh the delay and considerable risk of proceeding to trial"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) (affording "great weight to the recommendations" of experienced counsel), *aff'd*, 893 F.2d 347 (11th Cir. 1989).  Here, Class Counsel have extensive experience litigating employment discrimination class actions and endorse this settlement. *See* ECF No. 2, at 30.  Thus, the judgment of Class Counsel with substantial expertise in this type of litigation further supports that the Settlement is fair, adequate, and reasonable.

### C.    The Best Practicable Notice Has Been Provided to the Class.

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B).  The notice must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified

through reasonable effort." *Id.* at 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the Notice – which the Court approved in granting preliminary approval – satisfied each of these requirements and complied with the procedures set forth in the Court's Preliminary Approval Order.  ECF Nos. 32, 34; *see also* Smith Decl. ¶ 8. Class Counsel's efforts to ensure that Class Members received notice of the proposed settlement have been extensive.  The Parties retained Rust, an established Settlement Claims Administrator specializing in class action settlement administration.  Klein Decl. ¶ 2; Smith Decl. ¶¶ 2-3.  Before sending the Class Notice, Rust ran all addresses through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  Smith Decl. ¶ 10.  Rust then sent the Class Notice by First-Class U.S. Mail to Class Members.  Id. ¶ 11.  Rust ran electronic searches to determine any new or alternative address for the Class Members whose Class Notice were returned as undeliverable, and re-mailed 69 notices.  Id. ¶ 12.  As described above in Section II.B, at minimum the Class Notice reached 98% of Class Members.  Id.  In sum, the Notice complied fully with the Rule 23's requirements.

## V.    **CONCLUSION**

Accordingly, for the reasons stated herein, Plaintiffs respectfully request that the Court enter an order (1) approving the Settlement as fair, reasonable and adequate pursuant to Rule 23(e); (2) granting final judgment pursuant to the terms of the Settlement Agreement; (3) dismissing the Litigation with prejudice pursuant to the terms of the Settlement Agreement; and (4) retaining jurisdiction for five years from the Effective Date solely for purposes of entering all orders and judgments authorized in the Settlement Agreement that may be necessary to implement and enforce the relief provided therein.

Dated:    July 7, 2025              Respectfully submitted,
          Boca Raton, FL

                                    _____

                                    SHAVITZ LAW GROUP, P.A.
                                    Gregg I. Shavitz (Bar No. 11398)
                                    Paolo Meireles (Bar No. 91551)
                                    951 Yamato Rd. Suite 285
                                    Boca Raton, Florida 33431
                                    Telephone: (561) 447-8888

                                    Adam T. Klein*
                                    Chauniqua D. Young*
                                    OUTTEN & GOLDEN LLP
                                    685 Third Avenue, Floor 25
                                    New York, New York 10017
                                    Telephone: (212) 245-1000
                                    Facsimile: (646) 509-2060

                                    Courtney J. Hinkle*
                                    OUTTEN & GOLDEN LLP
                                    1225 New York Ave., Suite 1200B
                                    Washington, D.C. 20005
                                    Telephone: (202) 301-5509

Attorneys for Plaintiffs and the Class

\* Admitted *Pro hac vice*

## **CERTIFICATE OF GOOD FAITH**

Plaintiffs' Counsel certifies that, in conformance with Local Rule 3.01(g), Plaintiffs conferred with Defendants' counsel about the issues raised in this Motion. Defendants do not oppose the relief requested herein.

## <u>CERTIFICATION OF SERVICE</u>

We hereby certify that on July 2, 2025 we electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing portal.  We also certify that the foregoing is being electronically served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the Court's electronic filing portal.

_____
Gregg I. Shavitz
*Attorney for Plaintiffs and the Class*